## In re IMPERIAL TEXTILE CO.

(District Court, N. D. New York. March 1, 1917.)

1. EQUITY ⚖➔57—EQUITABLE MAXIMS.
   Equity regards as done that which ought to be done.
   [Ed. Note.—For other cases, see Equity, Cent. Dig. § 179.]

2. LIENS ⚖➔7—CREATION—FUTURE LIENS.
   While equity will enforce an agreement to give a lien upon property to be produced or acquired in the future, no such lien can be established, unless the property is clearly designated.
   [Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 26–28.]

3. BANKRUPTCY ⚖➔188(3)—EQUITABLE LIENS.
   A manufacturing company, finding itself unable to purchase and pay for material or labor to continue its business, entered into an oral agreement with claimant that, if he would furnish money for the continuation of the business, the company would, as goods were made up and sold on credit, assign to claimant the accounts therefor as security for payment of his advances. A list of accounts was made out and signed by an officer of the company, but the actual written assignment was not made, owing to differences between the parties as to some of its minor terms. *Held* that, while no corporate action was taken setting aside such particular accounts, and while liens cannot be created by reason of a mere sense of justice in a particular case, nevertheless, as the accounts to be assigned were practically designated, and as claimant's advances enabled the company to manufacture the goods, claimant will, on bankruptcy of the company, be treated as having an equitable lien, enforceable against such accounts or the proceeds derived therefrom.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 295.]

In Bankruptcy. In the matter of the bankruptcy of the Imperial Textile Company. Application for the review of an order of the special master granting claimant, William E. Nelson, a lien upon certain accounts of the bankrupt and priority as to the amounts collected. Order affirmed.

This is a review of an order made by F. J. De La Fleur, special master, holding that the claimant, William E. Nelson, was entitled to a lien upon certain accounts, and is entitled to a lien upon the money collected thereon, and now in the hands of the trustee in bankruptcy, to the extent of $585.50, and directing the trustee to pay that sum to said Nelson.

Senior & Sisson, of Utica, N. Y., for claimant.
Martin & Jones, of Utica, N. Y., for certain creditors.
James H. Merwin, of Utica, N. Y., for trustee.

RAY, District Judge. The petition in involuntary bankruptcy was filed March 1, 1915, and adjudication was had March 20, 1915. April 13, 1915, the trustee was duly appointed. About October or November, 1913, certain oral transactions were had between the claimant, William E. Nelson, and the officers and directors of the bankrupt, as a result of which the said officers and directors orally agreed, in be-

half of the bankrupt, Imperial Textile Company, with said Nelson, that Nelson would furnish funds to the company for use in its business as the same should be called for by its officers, and that as security for such funds so advanced the company would assign accounts receivable for goods sold, such accounts to repay said loans as the accounts were collected in course of business. This agreement was to be reduced to writing and was to be similar in its terms to a certain agreement theretofore in operation between the company and the Traders' Commercial Company, except that Nelson was to receive 6 per cent. on his advances only.

Thereafter on various dates between and including November 1, 1913, and May 25, 1914, Nelson advanced various sums of money to the company, which advances aggregated $4,420. These advances were made upon the request of the company, and were used by it in the ordinary course of its business. Proposed contracts were prepared and submitted by Nelson to the bankrupt, and others were prepared and submitted by the bankrupt's officers to Nelson; but, owing to disputes in regard to certain minor details thereof, such proposed contracts were never signed by both parties prior to the bankruptcy of the corporation. These negotiations were going on during the time the advances were made by Nelson to the company, and which advances were made at the request of the officers of said company. No accounts or other property were ever assigned to Nelson by written assignment as security for his said advances, and no payments of principal or interest had been made to him on such advances. During the time when such advances were being made by Nelson the said bankrupt owned various accounts receivable, such as the oral contract contemplated as security. Such of these accounts as were uncollected at the time of the bankruptcy passed into the hands of the trustee in bankruptcy and are set forth in a schedule attached to the trustee's report. The face value of such accounts was the sum of $709.70. The amount actually collected on the same and in the hands of the trustee is the sum of $585.50.

The special master finds that this was a valid contract, and that Nelson was entitled under said agreement to receive of the bankrupt's accounts receivable sufficient thereof to secure the repayment of his advances amounting to $4,420. Inasmuch as no assignment of accounts was made, and the only available accounts were those collected by the trustee and above referred to, Nelson is limited here by the special master to a lien upon the moneys collected on such accounts, viz., $585.50. The special master made an order directing the trustee to pay over to Nelson said sum of $585.50, and that is the order under der review.

[1-3] One question of law involved here seems to be this: When a manufacturing company, finding itself for want of funds unable to purchase and pay for material and pay labor for carrying on and continuing its business, in order to continue and carry on its business and for the purpose of enabling it to do so, orally agrees with a person that he will furnish money to the company for such purposes, and that from

time to time, as goods are made up and sold on credit, he shall have an assignment of the accounts due the company so created as security for the payment of the money so advanced and as payment on account, and under such agreement such person actually makes advances of money to the company, which is used by it in the purchase of material and in payment for labor which goes into the manufacture and production of merchandise which is sold by the company on credit, but such accounts are not actually assigned or transferred, and the company is forced into bankruptcy, and a trustee of its estate and property is appointed, and it has a considerable number of other general creditors, and it also appears that it was understood that the agreement for such advance of money and the assignment of such accounts was to be reduced to writing and signed by the parties, and writings were drawn, but not signed or executed, because of differences as to some minor details of the agreement, and as· to the amount of the advances, is such person who made such advances of money entitled to and does he have an equitable lien or claim on such accounts to the amount of his advances, which the court in bankruptcy should enforce as against such trustee?

The following cases and authorities would seem to indicate that in such a case there would be an equitable lien in favor of the person making the advances, which the bankruptcy court should declare and enforce. P. & O. Implement Co. et al. v. Moulden, as. Trustee, 228 Fed. 111, 142 C. C. A. 517, 35 Am. Bankr. Rep. 782; Gage Lumber Co. v. McEldowney, 207 Fed. 255, 124 C. C. A. 641, 30 Am. Bankr. Rep. 251; Goodnough M. & S. Co. v. Galloway (D. C.) 22 Am. Bankr. Rep. 803, 171 Fed. 940; Fourth St. Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855; Walker v. Brown, 165 U. S. 654, 664, 17 Sup. Ct. 453, 41 L. Ed. 865 (written agreement); 3 Pom. Eq. Jur. (3d Ed.) § 1235; 25 Cyc. 668, 670. Equity regards that as done which ought to be done. The agreement to assign must relate to specific and designated funds, property, or accounts, and the agreement must be definite and certain. In re Stiger, 209 Fed. 148, 126 C. C. A. 96.

In the instant case the accounts referred to due the company would not have come into existence, but for the advances made,. and it does not appear that either the labor or property of other creditors aided in their creation. In Coats v. Donnell, 94 N. Y. 168, it was held that a contract for a lien on property not in esse may be effectual in equity to give a lien as between the parties when the property comes into existence, and where there are no intervening rights of creditors or third persons. This was applied in Deposit Nat. Bank v. Rogers, 166 N. Y. 390, 59 N. E. 924, where the case related to an agreement to pledge goods not at the time in the possession of the pledgor, and where money was advanced by the bank to pay duties on goods on an agreement that it should have a lien on the goods when obtained for the amount so advanced. The lien was sustained. The court also said, citing cases:

"A party cannot mortgage property which he does not have, but he can agree to mortgage it or give a lien upon it as soon as he gets it, and equity will enforce the agreement and establish the lien."

Also, citing Sprague v. Cochran, 144 N. Y. 104, 38 N. E. 1000:

"So, where the intent is to give a lien, and what is done to that end is too defective to create it, but is consistent with its creation, and not a contract for something else, equity will treat as done what was intended to be done, and the lien may be established and foreclosed in the same action."

In the instant case the agreement related, not only to an assignment of accounts to come into existence after the agreement was made, and after the advances were made, and produced in whole or in part by the money advanced, but accounts *then* in existence, and which arose out of goods manufactured and sold prior to the making of the agreement and advances, and with the creation of which the advances had nothing to do. In short, for an advance of money to be made to the company to carry on its business it agreed to assign as security, and to apply as payment on account, accounts then due the firm; and the question is: Did this agreement, followed by an advance of money to the company, in fact made, create an equitable lien on such then existing accounts as against the trustee representing then existing creditors of such company thereafter bankrupt?

The company is not shown to have been actually insolvent at the time the agreement referred to was made, but its financial embarrassments were obvious. I think that, within some of the cases cited, the last-mentioned agreement, followed by advances of money under it, was sufficient to create an equitable lien on the accounts then in existence. The money was advanced on the agreement that such accounts would be assigned. The main difficulty is that the parties never agreed on *all* the terms of the contract. Care in such cases must be exercised that a lien is not given by judicial action, when none was created by act or agreement of the parties themselves.

Here, then, is a question of fact whether the claimant was to finance the company sufficiently to keep it running; that is, furnish all the money it might require, or only certain sums, or limited sums, and whether the claimant kept his agreement. On this question the special master or referee has found in favor of the claimant, and this court cannot say the finding is not supported by a fair preponderance of the evidence. But the question still remains: Were any particular existing accounts specified or pointed out? Liens cannot be created by reason of or from a mere sense of justice in a particular case. People's Electric R. Co. v. McKeen Motor Car Co., 214 Fed. 73, 130 C. C. A. 513. Here a list of accounts was made out and signed by an officer of the company indicating a purpose to appropriate those particular accounts or their proceeds to the payment of advances made by the claimant. It is true there was no corporate action by the directors setting aside these particular accounts, but in view of all the facts I think the setting aside and specification of these accounts was an act done by one having authority and binding on the corporation.

The trustee, after bankruptcy, went on and collected them, and the referee has ordered that the money in the hands of the trustee derived therefrom belongs to or should be paid to the claimant, who made the advances, and not to the trustee. The advances were $4,420, far in

excess of the money derived from the accounts to which the referee attached a lien, viz., $585.50. It would operate as a fraud on the claimant, who advanced his money under promise of an assignment of these accounts, to award this money to the trustee for the benefit of the general creditors, on the ground the written agreement was not completed and signed prior to the bankruptcy.

The agreement was made not in contemplation of the bankruptcy of the corporation, nor was it made to cheat and defraud creditors, or effect a preference. The other creditors had the benefit of this claimant's money, advanced under the circumstances stated, and justice demands that, to the extent this money in dispute will pay him, he should receive it. The claimant would not have loaned his money to the corporation, but for the agreement and understanding.

The order of the referee is affirmed.