# NATIONAL CITY BANK OF NEW YORK *v.* HOTCH-KISS, AS TRUSTEE IN BANKRUPTCY OF HASKINS.

# HOTCHKISS, AS TRUSTEE IN BANKRUPTCY OF HASKINS, *v.* NATIONAL CITY BANK OF NEW YORK.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 459, 460. Argued October 17, 20, 1913.—Decided November 3, 1913.

Courts may go far in giving financial transactions between banks and customers any form which will carry out the mutually understood intent, *Sexton* v. *Kessler*, 225 U. S. 90; but if the intent is doubtful or inconsistent with the legal effect of dominant facts it will fail.

An understanding that the proceeds of a loan made by a bank to a customer and placed to the credit of his general account are to be used to take up certain securities does not, in the absence of any special agreement to that effect, create a lien upon those securities, and the delivery of such securities to the bank with notice of the customer's impending insolvency is an illegal preference under the Bankruptcy Act.

A trust cannot be established in an aliquot share of a man's whole property, as distinguished from a particular fund, by showing that trust monies have gone into it.

Although a loan may be made for a specified purpose, if the lender places it in the stream of the borrower's general property there is no right of subrogation.

A general creditor may increase the bankrupt's estate by his advances and lose the right to take them back.

Time may sometimes be disregarded when it is insignificant, but not where it has sufficed to materially change the financial positions of the parties.

These cases are distinguished from *Gorman* v. *Littlefield*, 229 U. S. 19, and other cases in which there was a specific *res* which identified the fund and separated it from the general mass of the estate.

A notice to a bank demanding securities for a loan made to the bank-

rupt that bankruptcy was impending and that it was receiving a preference is sufficient to show that the bank had cause to believe that it was obtaining a preference.

Under an agreement, made in a suit by a receiver against a bank to recover securities in specie as an illegal preference, that the bank should hold them pending the decision of the suit with a power to sell in its discretion which had not been exercised, *held* that the bank was only liable for the securities and not for their value at the time the agreement was made.

201 Fed. Rep. 664; 120 C. C. A. 92, affirmed.

THE facts, which involve the determination of whether the delivery of securities by a broker, immediately preceding his bankruptcy, to a bank to secure its loan was an illegal preference, are stated in the opinion.

*Mr. John A. Garver* for appellant in No. 459 and for appellee in No. 460:

The law presumes an agreement or transaction to be legal, when it is capable of a construction which makes it valid. Jones on Evidence (2d ed.), § 85; *King* v. *Hawkins,* 10 East, 211; *Curtis* v. *Gokey,* 68 N. Y. 300, 304; *Ormes* v. *Dauchy,* 82 N. Y. 443.

So as to securing a just debt. *Getts* v. *Janesville Co.,* 163 Fed Rep. 417; *Re Neill Co.,* 170 Fed. Rep. 481, 484; *Re Leech,* 171 Fed. Rep. 622; *Sexton* v. *Kessler,* 172 Fed. Rep. 535, 537.

The right to recover a preference is exclusively statutory. The common law favors the diligent creditor. *Tompkins* v. *Hunter,* 149 N. Y. 117, 121; *Dodge* v. *McKechnie,* 156 N. Y. 514, 520; *Huntley* v. *Kingman,* 152 U. S. 527, 532.

A trustee in bankruptcy has, therefore, no power to avoid a preference, except on the precise grounds specified in the statute; and, as the right given is in derogation of the common law, it must be strictly pursued. Plowden, Comm. 113; Sutherland, Stat. Con., § 371; *Atkins* v. *Kinnan,* 20 Wend. 241, 249, 250.

A remedy which is given by statute must be strictly followed. *East Tenn. &c. R. Co.* v. *Southern Tel. Co.*, 112 U. S. 306, 310; *Campbellsville Lumber Co.* v. *Hubbert*, 112 Fed. Rep. 718, 724–750; affd., 191 U. S. 70; *Matter of Bryce*, 16 Daly, 443.

A transaction, such as this, which does not diminish the fund distributable among the creditors is not repugnant to the statute. *County Bank* v. *Massey*, 192 U. S. 138, 147; *Bank of Newport* v. *Herkimer Bank*, 225 U. S. 178, 184; *Gorman* v. *Littlefield*, 229 U. S. 19, 25; *Continental Trust Co.* v. *Chicago Title Co.*, 229 U. S. 435.

This rule applies even where the account is not active and where two payments have been made without any intermediate sale. *Re Sagor*, 121 Fed. Rep. 658; *Jaquith* v. *Alden*, 189 U. S. 78; *Yaple* v. *Dahl-Milliken Co.*, 193 U. S. 526; *Wild* v. *Provident Trust Co.*, 214 U. S. 292, 296.

There are no other creditors of the same class.

A payment is objectionable under § 60 only when it has the effect of enabling one creditor to obtain a greater percentage of his claim than other creditors of the same class. *Swartz* v. *Fourth Natl. Bank*, 117 Fed. Rep. 1; *Crooks* v. *People's Bank*, 46 App. Div. 335.

The classification referred to in § 60a is not the same as that providing for a priority in the payment of debts in § 64b. As to differences in classification, see *Re Belknap*, 129 Fed. Rep. 646; *Re Barrett*, 6 Am. Bkcy. Rep. 199; *Re Harpke*, 116 Fed. Rep. 295, 297; *Re Denning*, 114 Fed. Rep. 219, 221; *Gomila* v. *Wilcombe*, 151 Fed. Rep. 470.

There is no proof that the bankrupts intended to give preference.

Prior to the amendment of 1910, the trustee in bankruptcy was required to prove, in a suit of this kind, that the creditor knew that the bankrupt actually intended to give a preference. *Hardy* v. *Gray*, 144 Fed. Rep. 992; *Re First Natl. Bank*, 155 Fed. Rep. 100 (C. C. A. 6th); *Bank* v. *Graves*, 156 Fed. Rep. 168; *Tumlin* v. *Bryan*, 165

Fed. Rep. 166; *Re Leech,* 171 Fed. Rep. 622; *In re Sayed,* 185 Fed. Rep. 962; *Kimmerle* v. *Farr,* 189 Fed. Rep. 295; *Debus* v. *Yates,* 193 Fed. Rep. 435. As to the effect of the amendment, see *Alexander* v. *Redmond,* 180 Fed. Rep. 192, and cases cited in brief for appellant, in *Mechanics Bank* v. *Ernst (post,* p. 64).

Defendant did not have reasonable cause to believe it was obtaining a preference. *Irish* v. *Citizens' Trust Co.,* 163 Fed. Rep. 880.

The conduct of defendant's officers in asking for the securities on that day is entirely consistent with the understanding and usage of the business, and is in direct accord with the written contract, that clearance loans shall be taken care of before the close of business hours.

Subrogation exists. The tendency is to extend subrogation to every possible case for the protection of one advancing money for discharging obligations carrying security. *Matthews* v. *Fidelity Title Co.,* 52 Fed. Rep. 687, 689.

Subrogation is allowed in every instance in which one party pays a debt for which another is primarily liable, and which, in equity and good conscience, the latter should have discharged. *Stevens* v. *King,* 84 Maine, 291; *Dunlop* v. *Adams,* 174 N. Y. 411, 416; *Atlantic Trust Co.* v. *Kinderhook Co.,* 17 App. Div. 212; *Louis* v. *Bauer,* 33 App. Div. 287, 293; *Peters* v. *Meyer,* 72 App. Div. 585; *Gans* v. *Thieme,* 93 N. Y. 225; *Pease* v. *Egan,* 131 N. Y. 262, 273; *Moorehouse* v. *Bklyn. Heights Co.,* 185 N. Y. 520, 524; *Title Guarantee Co.* v. *Haven,* 196 N. Y. 487; *Lidderdale* v. *Robinson,* 2 Brock. 159, 168.

The only exception is that it will not be applied to defeat the superior or equal equities of third persons. 4 Pom. Eq. Juris. (3d Ed.), § 1419, *note; Union Tr. Co.* v. *Monticello R. R. Co.,* 63 N. Y. 311, 314.

The bankruptcy courts should apply the doctrine recognized in the state courts. *Hewitt* v. *Berlin Works,* 194 U. S. 296; *Thompson* v. *Fairbanks,* 196 U. S. 516;

*Humphrey* v. *Tatman*, 198 U. S. 93; *Sabin* v. *Camp*, 98 Fed. Rep. 974.

Equity will not permit technicalities or even serious obstacles to stand in the way of the enforcement of the principle of subrogation. *Peters* v. *Meyer*, 72 App. Div. 585; *Gans* v. *Thieme*, 93 N. Y. 225; *Pease* v. *Egan*, 131 N. Y. 262; *Cobb* v. *Dyer*, 69 Maine, 494.

It is not necessary that the person to be subrogated should pay the creditor directly. It is sufficient if he advances the money for the purpose of enabling the debtor to pay the debt. *Building Assn.* v. *Thompson*, 32 N. J. Eq. 133; *Merchants' Bank* v. *Tillman*, 106 Georgia, 55; *Sgobe* v. *Cappadonia*, 8 App. Div. 303; *Peters* v. *Meyer*, 72 App. Div. 585.

The proceeds of the loan constituted a trust fund. *Sexton* v. *Kessler*, 172 Fed. Rep. 535, 544.

This loan was made in conformity with an established custom between banks and their broker customers. A general custom is the common law itself, or a part of it; even written contracts will yield to such custom. *Walls* v. *Bailey*, 49 N. Y. 464, 471; Elkus on Secret Liens, 83, § 150.

There was a special fund held by the bankrupts for a specific purpose, to be used in protecting and enhancing the value of the general assets, and having, consequently, such character that no general creditor could claim any right to share in it. *Gorman* v. *Littlefield*, 229 U. S. 19, 25; *Fourth Street Bank* v. *Yardley*, 165 U. S. 634.

*Mr. Abram I. Elkus*, with whom *Mr. Wesley S. Sawyer* was on the brief, for appellees in No. 459 and appellants in No. 460.

Mr. JUSTICE HOLMES delivered the opinion of the court.

This is a suit by a trustee in bankruptcy to recover certain securities alleged to have been transferred to the

defendant bank by way of preference. The plaintiff had a judgment in the District Court, 200 Fed. Rep. 287, *id.* 299, and in the Circuit Court of Appeals, 201 Fed. Rep. 664; 120 C. C. A. 92. Both parties appeal; the plaintiff upon a subordinate question as to its right to elect damages instead of a return of the securities.

The case arose upon what is known in New York as a clearance loan. Brokers need large sums to clear or pay for the stocks that they receive in the course of the day, and as the stocks must be paid for before they are received and can be pledged to raise the necessary funds, these sums are advanced by the banks. They are returned later on the same day by making deposits to the borrower's account and drawing a check to the order of the bank. Perhaps such a general course of dealing might be arranged so as to give a lien on the loan or its proceeds until payment, but the question whether such a lien has been created rarely, if ever, has arisen, the whole business being finished in a few hours. It is, however, the main issue in this case.

The bankrupts were brokers in partnership and at ten o'clock on January 19, 1910, had assets exceeding their liabilities by nearly half a million dollars. These assets consisted largely in the stock of a coal and iron company in which there was a pool. Before twelve, there was a break in the market, the stock went down and at about noon the suspension of the firm was announced. A petition in involuntary bankruptcy was filed at ten minutes after four on the same day. At about ten, the bank made a clearance loan to the bankrupts of $500,000 in the usual way to enable them to meet their current obligations and to get the stocks deliverable on that day, the bank receiving demand notes and both parties acting in good faith. The sum was credited in the deposit account of the firm, in addition to $54,319.98 already there, and soon after the bank certified and subsequently paid checks amounting

to $535,920.74. During the day the firm made deposits which are not in question, but there remained due upon the loan $166,166.69. Officers of the bank noticing the drop in the stock went to the firm, demanded payment or securities to make good the obligations to the bank, and were told of the suspension and that a petition in bankruptcy would be filed. After two hours discussion the securities in question were delivered between 2 and 3 p. m., but the officers were told that the delivery was a preference. Some of the securities bore no relation to the loan; others and, it may be assumed for purposes of argument, most, had been released by the money thus obtained.

In dealing with transactions of this kind we may go far in giving them any form that will carry out the mutually understood intent. *Sexton* v. *Kessler,* 225 U. S. 90, 96, 97. But if the intent was doubtful or inconsistent with the legal effect of dominant facts, it must fail. For instance, apart from possible exceptions, a man cannot retain a domicil in one place when he has moved to another and intends to reside there for the rest of his life, by any wish, declaration or intent inconsistent with the dominant facts of where he actually lives and what he actually means to do. *Dickinson* v. *Brookline,* 181 Massachusetts, 195. In the present case it is agreed that it was expected and understood that no portion of the clearance loan was to be used for any purpose other than to clear securities. But on the other hand, by consent of the bank as it seems, the loan was put into the general deposit account, which was drawn upon for general purposes, at least to the extent of the balance above the loan; the securities released were not kept separate but were used like any others; and no separate account was kept of money received from deliveries of stock so released. What happened as between these parties was simply that all monies received in the course of the day from whatever source went into the firm's

deposit account with the bank. So that, even if we take it, as a corollary of what was understood, that the use of the clearance loan was expected to enable the firm to repay the loan, it does not appear to have been expected that the proceeds should be appropriated specifically to that end, but simply that the addition of such proceeds to the general funds of the firm would enable the latter to pay within the time allowed. This is the view of the facts taken by the master and both of the courts below. They also found that an attempt to give the matter a different complexion by custom had failed; and if we went behind their findings we should take the same view.

A trust cannot be established in an aliquot share of a man's whole property, as distinguished from a particular fund, by showing that trust monies have gone into it. On similar principles a lien cannot be asserted upon a fund in a borrower's hands, which at an earlier stage might have been subject to it, if by consent of the claimant it has become a part of the borrower's general estate. But that was the result of the dealings between these parties, and it cannot be done away with by a wish or intention, if such there was, that alongside of this permitted freedom of dealing on the part of the bankrupts, the security of the bank should persist. It is not like the case of property wrongfully mingled with general funds and afterwards traced. All that the parties agreed either expressly or by implication was that the debt incurred at ten o'clock should be paid by three. Some banks seem to have required the dealing to be conducted on the footing of a fund identified and subject to a trust at every step, but between these parties there was no attempt to follow a specific fund through a series of changes until it was returned. See *Dillon* v. *Barnard*, 21 Wall. 430.

As all trace of the bank's money was lost when it entered the stream of the firm's general property there can be no right of subrogation. Neither can a claim be upheld on

the ground that there was no diminution of the bankrupt's assets, or that the transaction should be regarded as instantaneous and one. ·The consent to become a general creditor for an hour, that was imported, even if not intended to have that effect, by the liberty allowed to the firm, broke the continuity and established the loan as part of the assets. No doubt many general creditors have increased a bankrupt's estate by their advances, but they have lost the right to take them back. Time sometimes can be disregarded when it is insignificant. But in this case half the time between the loan and the transfer of securities sufficed to change the position of the borrowers from a fortune of half a million to a deficit of double that amount.

In both *Gorman* v. *Littlefield*, 229 U. S. 19, and *Richardson* v. *Shaw*, 209 U. S. 365, in addition to the personality of the holder there was also a specific stock, which identified the fund relied upon and separated it from the general mass of the estate. *Hurley* v. *Atchison, Topeka & Santa Fé Ry. Co.*, 213 U. S. 126, stood on the peculiar facts of the case, which were held to point to an identified *res* and give an immediate claim against it. The case established no general proposition contrary to what we now decide.

The suggestions that it does not appear that the bankrupts intended to give a preference or that the bank had reasonable cause to believe that it was obtaining one, hardly need answer. The bank did not confine its demand to proceeds of the loan but asked for and obtained securities without regard to their source. It was notified in terms that it was receiving a preference and that the firm was going into bankruptcy. If this was not sufficient notice it is hard to imagine what would be enough.

The cross appeal depends upon the frame of the bill and effect of an agreement between the parties. On April 5, 1910 it was agreed that the securities in question might be sold by the bank "at the best price obtainable, at such

times as may seem best to the officers of" the bank; that the rights of both parties "shall attach to the proceeds realized from the sale" and "the amount realized from the sale of the said securities shall stand in lieu of the securities and shall represent the amount of the liability" of the bank to the trustee in bankruptcy in case of judgment against it. "The making of this stipulation shall not alter the rights or claims of any of the parties, nor change the jurisdiction of any court . . . it being the intention of the stipulation that the securities in the possession of the National City Bank shall be converted into money at the best prices obtainable, and that all rights' of the parties shall remain as against the proceeds of the sale of the said securities the same as they existed against the securities themselves at the time of making this stipulation."

It seems that no sale took place. The decree was for a delivery of the securities with all interest and dividends thereon received and in default thereof for $161,740.62 with interest from the date of the master's report. But as the securities have declined a good deal below their value at the time of conversion and again below their value at the date of the foregoing agreement, the trustee claims the right to take the sum named, with corrections. This was answered sufficiently by Judge Hand in the District Court. As he observed, the suit was in equity to recover the securities in specie. After the agreement· the bank was authorized to hold them until it thought it wise to sell. If it had sold, there can be no doubt that the plaintiff's claim would have been limited to the proceeds, by the words of the contract. Its judgment not to sell, exercised for the benefit of both parties, cannot have been intended to put it in a worse position. Such an understanding would have deprived the plaintiff of the judgment of the bank.

*Decree affirmed.*