### In re IMPERIAL TEXTILE CO.

(District Court, N. D. New York. January 25, 1919.)

1. LIENS ⬅➤7—EQUITABLE LIENS—VALIDITY.

An equitable lien to be valid must relate to some specific property or thing capable of segregation and identification. Therefore one who advances money to a corporation under agreement that certain of its accounts should be assigned to him is not, no assignment having been carried out, entitled to the lien on all of the accounts.

2. CHATTEL MORTGAGES ⬅➤11—POTENTIAL EXISTENCE.

An oral agreement by a debtor to assign accounts to accrue to one who advanced money is not good as a mortgage, for it was not in writing and filed, even if accounts could be mortgaged, and the accounts, not being in existence, could not be mortgaged.

3. PLEDGES ⬅➤11—VALIDITY.

An agreement by a debtor to assign accounts to one who made advancements is not valid as a pledge, where there was no delivery of the accounts.

4. BANKRUPTCY ⬅➤245—TRUSTEE—REPRESENTATION OF CREDITORS.

A trustee in bankruptcy represents the general creditors.

5. TRUSTS ⬅➤10—TRUST IN ALIQUOT PART OF PROPERTY.

Where claimant advanced money to the bankrupt under an oral agreement that the bankrupt should assign accounts as security and the money advanced could not be traced in accounts which came into the hands of the trustee in bankruptcy, there was no trust, as a trust cannot be established in an aliquot share of a man's whole property.

6. TRUSTS ⬅➤10—CONSIDERATION—CONSTRUCTION.

The court cannot, in such case, treat the agreement as one to assign "all" the accounts, for that would be making a new contract.

On Rehearing. Former decision establishing an equitable lien in favor of the claimant, one William E. Nelson, reversed.

For former, opinion, see 239 Fed. 775.

This case is now before this court on a rehearing granted by the court after a decision affirming the report and decision of the referee which established an equitable lien on the sum of $585.50 in the hands of the trustee in favor of the claimant thereto, one William E. Nelson, and which sum is the proceeds of certain accounts due and owing to the bankrupt at the date of the bankruptcy and which were collected by the trustee.

See (D. C.) 239 Fed. 775.

Senior & Sisson, of Utica, N. Y., for claimant.
Martin & Jones, of Utica, N. Y., for certain creditors.
Jas. H. Merwin, of Utica, N. Y., for trustee.

RAY, District Judge. The referee found, and this court found and again finds, as the evidence shows, that in the latter part of October or first days of November, 1913, the exact date being October 27, 1913, the now bankrupt, Imperial Textile Company, then in active business at Utica, N. Y., by its duly authorized officers and agents, entered into an "oral" agreement with the claimant, Wm. E. Nelson, by the terms of which Nelson was to advance to the company sums of money, from time to time as it might require same, to carry on its business, and the Imperial Textile Company, in consideration thereof, was to assign to said Nelson accounts due it from its customers as security for or in payment of such advances. It was not the agreement to assign and transfer to Nelson "all" such accounts, but enough to secure or repay the advances. This agreement was to be reduced to writing and executed by the parties; but, owing to some disagreements as to minor details, it was not completed and signed, but Nelson in pursuance of the agreement, and relying thereon, did make advances to the amount of $4,420, and the textile company had the money and used it in its business and creating accounts which came to it for goods sold and delivered. It is impossible to trace this money so advanced by Nelson into any particular account or accounts, or into the accounts which came into the hands of the trustee and were collected by him producing the $585.50 in question. Probably some of it did go to create those accounts.

At one time and on or about December 31, 1913, the Imperial Textile Company did select out and execute an assignment of certain accounts "then" actually existing of the face value of $1,475.02; but same were not actually turned over to Nelson, or to any one for him, and the textile company thereafter proceeded to collect such accounts and use the money derived therefrom in running and conducting its business, notwithstanding such assignment. Undoubtedly, some of the money derived from the collection of these accounts went into the creation of goods which when sold, in part at least, resulted in the creation of some of the accounts which thereafter went into the hands of and were collected by the trustee. This is largely conjectural, however.

The accounts, 65 in number, selected and specified in the assignment actually drawn, were collected in whole or in part, and the pro-

ceeds used by the textile company as follows: 38 of same in January, 1914; 17 of same in February, 1914; 11 of same in March, 1914; 6 of same in April, 1914; and 1 May 26, 1914. January 11, 1915, $1.70 was collected on one of the same.

The petition in bankruptcy was filed on March 1, 1915. Hence all of the said accounts specified in such assignment so drawn were collected and the proceeds used by the textile company more than four months prior to the bankruptcy.

No other accounts were assigned or selected to take the place of these, and no other accounts were selected or assigned under and pursuant to the oral agreement above set forth.

In deciding the case originally and affirming the referee, it was the understanding of this court that the $585.50 came from the collection of the specific accounts mentioned and set apart in the assignment actually executed, whereas, it now appears that all of such money except $1.70 came from other accounts never selected, or set apart, or assigned. The court said (see 239 Fed. 775):

"Did this agreement, followed by an advance of money to the company, in fact made, create an equitable lien on such then existing accounts as against the trustee representing then existing creditors of such company thereafter bankrupt?

"The company is not shown to have been actually insolvent at the time the agreement referred to was made, but its financial embarrassments were obvious. I think that, within some of the cases cited, the last-mentioned agreement, followed by advances of money under it, was sufficient to create an equitable lien on the accounts then in existence. * * *

"Here a list of accounts was made out and signed by an officer of the company indicating a purpose to appropriate those particular accounts or their proceeds to the payment of advances made by the claimant. It is true there was no corporate action by the directors setting aside these particular accounts, but in view of all the facts I think the setting aside and specification of these accounts was an act done by one having authority and binding on the corporation.

"The trustee, after bankruptcy, went on and collected them, and the referee has ordered that the money in the hands of the trustee derived therefrom belongs to or should be paid to the claimant, who made the advances, and not to the trustee. The advances were $4,420—far in excess of the money derived from the accounts to which the referee attached a lien, viz., $585.50. It would operate as a fraud on the claimant, who advanced his money under promise of an assignment of these accounts, to award this money to the trustee for the benefit of the general creditors, on the ground the written agreement was not completed and signed prior to the bankruptcy."

The now bankrupt had other creditors during all the times above mentioned, and no written agreement creating or purporting to create a lien on its accounts, due or to become due, was executed or filed.

[1-4] The question is, therefore: Did the oral agreement above stated between the Imperial Textile Company and William E. Nelson, followed by the advance of money as stated, operate to create any lien as against the trustee in bankruptcy on the other accounts of such company not selected and included in the assignment mentioned and which came into the hands of the trustee and from the collection of which he derived the $585.50, or did the collection by the Imperial Textile Company of the said accounts so actually assigned and the use by it of the money derived from their collection operate to create

an equitable lien or furnish sufficient ground to authorize the establishment or declaration of an equitable lien on the other accounts subsequently coming into existence or accruing and which came to the trustee and were collected by him? These questions were not originally passed upon or decided, as it was supposed the money referred to was derived from accounts produced by the moneys advanced by Nelson and collected by the trustee after same had been selected and specified in the assignment actually drawn and executed.

An equitable lien to be valid must relate to some specific property or thing capable of segregation and identification. Grinnell v. Suydam, 5 N. Y. Super. Ct. 132; Willetts v. Brown, 42 Hun, 140; Porter v. White, 127 U. S. 235, 8 Sup. Ct. 1217, 32 L. Ed. 112; Wright v. Ellison, 1 Wall. 16, 17 L. Ed. 555; National City Bank v. Hotchkiss, 231 U. S. 50, 57, 34 Sup. Ct. 20, 58 L. Ed. 115; In re Stiger, 209 Fed. 148, 126 C. C. A. 96.

The equitable lien, if any, of Nelson, was not to attach "to all" the accounts of the Imperial Textile Company. There was no such agreement. From time to time as advancements of money were made accounts were to be selected and assigned. The accounts were never selected except as stated, and Nelson did nothing to enforce performance. It is not a case of the mixing or commingling by a wrongdoer of his own property with that of an innocent party.

It is the case of an advance of money to keep the now bankrupt going with an agreement by it to assign accounts due the borrower and in which, on default of the borrower to give the security it promised, and the performance of which agreement required selection of accounts and an assignment thereof which was not done, this court is called upon in the exercise of its equitable powers and jurisdiction to declare and enforce a lien against creditors on "all the accounts" of the now bankrupt which have gone into the hands of the trustee in bankruptcy and been collected by him. This agreement is not good as a mortgage, for it was not in writing and filed even if accounts could be mortgaged; and, again, property not in being cannot be mortgaged. It is not good as a pledge, as there was no delivery. It cannot hold good as an equitable lien, as the thing or things to which the lien was to attach was not ascertained and is not capable of identification. Again, the rights of general creditors have intervened, and these creditors are represented by the trustee. See Titusville Iron Company v. City of New York, 207 N. Y. 203, 100 N. E. 806; In re P. J. Sullivan Co., Inc. (D. C.) 247 Fed. 139, affirmed by C. C. A. November 13, 1918, 254 Fed. 660, —— C. C. A. ——; Sexton v. Kessler & Co., 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; and see cases above cited.

If the money advanced by Nelson could be traced with reasonable certainty into the accounts which went into the hands of the trustee and were collected by him, thus producing the money in question, this court would not hesitate to impress such money with a lien in Nelson's favor and direct its payment to him on the authority of Hurley, Trustee, v. Atchison, Topeka & Santa Fé Ry., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729, and Hauselt v. Harrison, 105 U. S. 401, 407,

26 L. Ed. 1075. But there is no reasonable certainty that any of Nelson's money advanced by him went to produce such accounts. It is not like several persons, or one person taking his grain to an elevator or a storage warehouse where it is rightfully commingled with that of the owner of the storage warehouse and perhaps with that of others, in which case each has a property right in the grain in the elevator or warehouse bins although emptied and filled by the owner 20 times. See Sexton v. Kessler, 225 U. S. 98, 32 Sup. Ct. 657, 56 L. Ed. 995. In National City Bank v. Hotchkiss, 231 U. S. 50, 57, 34 Sup. Ct. 20, 21 (58 L. Ed. 115) the court said:

"A trust cannot be established in an aliquot share of a man's whole property, as distinguished from a particular fund, by showing that trust moneys have gone into it. On similar principles a lien cannot be asserted upon a fund in a borrower's hands, which at an earlier stage might have been subject to it, if by consent of the claimant it has become a part of the borrower's general estate."

And at page 58 of 231 U. S., at page 22 of 34 Sup. Ct. (58 L. Ed. 115), the court further says:

"In both Gorman v. Littlefield, 229 U. S. 19 [33 Sup. Ct. 690, 57 L. Ed. 1047], and Richardson v. Shaw, 209 U. S. 365 [28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981], in addition to the personality of the holder there was also a specific stock, which identified the fund relied upon and separated it from the general mass of the estate."

In the instant case the Imperial Textile Company had property other than its accounts; some money from time to time and some other property, and it was accounts—some accounts- -not all, that were to be assigned from time to time. The security was to come from accounts, but was not a pledge of "all" accounts. But does this fact take the case from the principle announced in the Hotchkiss Case, supra? True the lien, if any, was on accounts, to be selected and assigned, and hence that part of the textile company's property consisting of accounts due, or to become due to it, was pointed out, and it is not sought to establish a lien on an aliquot part of the debtor's "entire" estate. But it is sought to establish a lien on an aliquot part of all that portion of the entire estate consisting of accounts inasmuch as the security to be given was to be selected from accounts receivable.

[5] But we meet another difficulty. Certain accounts were selected and a written assignment of same actually executed. Nelson did not insist on his rights or on the actual delivery of such assignment or the execution and delivery of assignments thereafter, and the textile company was permitted by him to go on dealing with all accounts payable to it as its own property until actual bankruptcy occurred. Even if we can properly term all accounts receivable a fund out of which, by assignment of selected accounts Nelson was to be paid, did he not by his conduct consent that they become a part of the debtor's general estate? Nelson made his last and final advancement May 25, 1914, and it was March 1, 1915, when the petition in bankruptcy was filed. In the meantime business was conducted as usual. If this had been an agreement to assign certain specified accounts, or if certain specified accounts had been selected and agreed upon for

assignment and the transaction had not been perfected by actual assignment and such selected and specified accounts had gone into the hands of the trustee thus charged with an equitable lien and had been collected by him, there would be no difficulty in establishing a lien on the moneys collected. Equity would regard that as actually done which ought to have been done, and the rights of the trustee would not be greater than those of the bankrupt company. But that case is not here. In Hurley, Trustee, v. Atchison, 213 U. S. 126, 132, 133, 29 Sup. Ct. 466, 468 (53 L. Ed. 729), the Supreme Court cited with approval the following from In re Chase, 124 Fed. 753, 755, 59 C. C. A. 629, 631:

"It is settled that a trustee in bankruptcy has no equities greater than those of the bankrupt, and that he will be ordered to do full justice, even in some cases where the circumstances would give rise to no legal right, and, perhaps, not even to a right which could be enforced in a court of equity as against an ordinary litigant. Williams' Law of Bankruptcy (7th Ed.) 191. Indeed, bankruptcy proceeds on equitable principles so broad that it will order a repayment when such principles require it, notwithstanding the court or the trustee may have received the fund without such compulsion or protest as is ordinarily required for recovery in the courts either of common law or chancery."

And also the following from Thompson v. Fairbanks, 196 U. S. 516, 526, 25 Sup. Ct. 306, 310 (49 L. Ed. 577):

"Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act."

In Greey v. Dockendorff, 231 U. S. 513, 515, 34 Sup. Ct. 166, 58 L. Ed. 339, Schwab-Kepner Company, the bankrupt, agreed with Dockendorff to assign to him, after shipment of goods, the accounts receivable representing the purchase price of such goods sold on credit as security for the loans of money as now stated, viz., Dockendorff was to lend to said firm 80 per cent. of the net face value of such accounts receivable as he should approve, less commissions and discounts, up to a certain sum, not exceeding $175,000 at any one time. The said Schwab-Kepner Company was to give its notes, deliver shipping documents, furnish evidence of the receipt of the merchandise and give notice of any return of goods or counterclaim for damages, deliver the proceeds of such accounts as were found correct, and permit examination of its books. Dockendorff's lien was to be for all sums due, and was to cover all accounts; but he was not bound to lend on accounts he did not approve. When the said firm failed, it owed Dockendorff $252,838.54 for advances made under the agreement for which he had actually received assignments of accounts from the firm as it received orders, and after the contract of sale was made but prior to the actual delivery of the goods. The business of the firm was to purchase raw material from the mills, have it sent to bleacheries, and when finished to ship same to buyers. The question was whether such agreement was good and carried title to the accounts

actually assigned, or was void as in fraud of creditors. The contract was held good and that—

"Where the goods never would have come into the bankrupt's hands had he not promised to give a lien thereon to one making the advances necessary for obtaining them, there is no reason why the rights of general creditors (represented by the trustee) without liens should intervene to defeat the security given in good faith before there was any knowledge of insolvency."

In that case, it will be noted, the lien by actual assignment of the accounts had been given, and the issue was as to the validity of the agreement. In the instant case there is no question of the validity of the agreement to assign accounts on advances made, and as security therefor; but, while the advances were made and some accounts were selected and assigned and collected by the textile company, the proceeds were not turned over to Nelson, and it would seem clear the accounts in question, from which the money collected by the trustee and on which money it is sought to impress a lien was derived, were not in existence when the advances were made, but were created and accrued some months thereafter and were never agreed upon or selected to be assigned and never were assigned. The Dockendorff Case has no application to the one now before the court. I am unable to find authority for holding that because the textile company orally agreed October 27, 1913, in consideration of advances thereafter to be made by Nelson, such advances to be used in the business, to assign accounts either in payment, or as security, and which advances to the extent of $4,420 were all made prior to May 25, 1914, that an equitable lien may be established on the proceeds of accounts due such company when it went into bankruptcy March 1, 1915, and which accounts came to the trustee after his appointment and were collected by him; it not being shown that such accounts were in existence when the agreement was made, or when the advances were made, or that any of the advances went to create such accounts, or that such accounts, which went to the trustee, were ever selected or agreed upon to be assigned, especially in face of the fact that Nelson, who made the advances, did not insist on compliance with the agreement, and that the only accounts ever selected and included in an assignment were collected by the textile company and the proceeds used in its business, apparently with the consent of Nelson, at least without objection on his part—all long before the bankruptcy.

[6] If the agreement had been to assign "all" accounts, those then existing as well as those thereafter to be created, the case would be different, as in such case the accounts as they came into existence could be regarded as the fund to which Nelson was to look for reimbursement and which was to be assigned to him. This court cannot make and substitute a new contract for the parties in order to do what it might think justice would require. The agreement as found by the referee was:

"That said Nelson was to furnish funds to said Imperial Textile Company for use in its business as the same should be called for by its officers, and that as security for such funds so advanced said Imperial Textile Company would assign accounts receivable for goods sold; such accounts to repay said loans as the accounts were collected in course of business."

The finding of the referee on this subject is as strong as the evidence will warrant. As already stated, this agreement contemplated, not an assignment of "all" accounts due or to become due the textile company, but the assignment of accounts to be selected by one or both the parties, and we cannot import into it an agreement for a lien on "all" accounts due the firm or that might come due it. To do so would work injustice on the other creditors of the textile company. The order of the referee is reversed, but if desired by the claimant the case may be sent back to the referee to take further evidence and allow such claimant to establish, if he can, that the accounts that went to the trustee and were collected by him, or some of them, were in existence when the agreement was made, or when the advances were made, or that the money advanced went to create such accounts or some of them. If such proof is not made, the application and petition of the claimant will be denied.

There will be an order accordingly.