## In re BURKHART & SON PACKING CO.

### In re KENT STORAGE CO.

#### No. 6123.

District Court, W. D. Michigan, S. D.
June 14, 1935.

George B. Kingston, of Grand Rapids, Mich., for bankrupt.

Benn M. Corwin, of Grand Rapids, Mich., for claimant.

Cleland & Snyder, of Grand Rapids, Mich., for trustee in bankruptcy.

RAYMOND, District Judge.

This matter is before the court by certificate on review of the order of the referee in bankruptcy determining that petitioner has an equitable lien upon certain stock in trade, materials, supplies, accounts receivable, and proceeds of accounts receivable as security for moneys advanced and for its reasonable charges for handling, storage, and caring for the property.

The fact findings of the referee in bankruptcy are not challenged in any important particular, and an examination of the record discloses that they are fully sustained by the evidence. Certain additional facts which appear by the record are also pertinent. About September 13, 1932, bankrupt, whose principal place of business was near Traverse City, Mich., entered into a written agreement with petitioner for rental ·of certain space in one of its buildings in the city of Grand Rapids for use- in processing and packing cherries. This agreement contained the following provisions:

"Cherries to be withdrawn from storage stock in 25 barrel lots. All said Cherries to remain in hands of Kent Storage Company until withdrawn for sale, whether to be in barrels, glass or cartons. Loans to be retired at time of withdrawals from stock either in barrels or cartons.

"The Kent Storage Company also agrees to Warehouse consignments of glass stored for your account and to be paid for by Burkhart & Son as withdrawn, and proceeds forwarded to Capstan Glass Co. or other glass manufacturers, such Warehouse and handling charges to be paid for by Burkhart & Son on the basis of 3% of invoice."

Prior to December 31, 1934, petitioner had paid for cherries, glass, sugar, caps, containers, and other materials to the amount of $13,853.67. For more than a year prior to bankruptcy, which occurred on March 4, 1935, bankrupt had put practically no money into the branch of the business carried on at Grand Rapids. During that period, no goods were shipped from the warehouse without release by petitioner and an assignment to it of invoices. During that period petitioner gave bankrupt a weekly statement on which were credited assigned accounts and on which charges were made for advances, which included bankrupt's weekly pay roll. On August 11, 1934, bankrupt delivered to petitioner its promissory note in the sum of $5,511.34, and petitioner issued a warehouse receipt to bankrupt with an inventory attached. The warehouse receipt was indorsed and possession thereof retained by petitioner. On December 31, 1934, a substantially similar transaction took place; the indebtedness then having increased to $10,364.-52.

On February 4, 1935, petitioner took absolute control of the property occupied by bankrupt. Bankrupt was so notified and acquiesced therein. The keys to the building were thereafter retained by petitioner, and its employees locked and unlocked the doors. Thereafter no merchandise was shipped excepting by the direct orders of petitioner, whose employees supervised the shipping of all merchandise.

██ The court is of the opinion that the referee was clearly right in holding that it was the intention of petitioner to create an equitable lien upon the property of bankrupt which was placed in its building and upon the proceeds of sales. The definition of an equitable lien found in Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865 (quoted in the referee's opinion) applies to the situation here existing. The facts also meet the requirements of the rule stated in Penn Lumber Co. v. Wilson (C.C.A.) 26· F.(2d) 893, 894, as follows: "It is clearly the rule in the case of equitable liens that it must appear that it was the intention of the parties that certain specified property should be set aside and appropriated as security for the payment of a particular debt, that such property had actually been set aside and appropriated for this particular purpose, and that it can be clearly identified as the property the parties had in mind at the time."

Whatever doubt may exist as to the situation prior to February 4, 1935, what was done on that day definitely amounted to an appropriation and setting aside of the property as security for the indebtedness to petitioner. The record discloses that prior to February 4, 1935, bankrupt was free to ship merchandise as desired without control by petitioner, but, after that date, no merchandise could be shipped unless a warehouse ticket was obtained and the merchandise checked out by petitioner's representative.

The trustee strenuously urges that, by virtue of the amendment of June 25, 1910, § 8 (11 U.S.C.A. § 75 (a) (2), to section 47a (2) of the Bankruptcy Act, he, being in the position of a creditor holding a lien by levy or other legal process, obtained title superior to that of the holder of the equitable lien. The question is not without difficulty. In Collier on Bankruptcy, § 1366, it is said: "Prior to the amendment of sec. 47a (2) of the Bankruptcy Act in 1910 [11 U.S.C.A. § 75 (a) (2)] it was well settled that equitable liens, established in good faith in respect to any particular property, were cognizable in courts of bankruptcy and would be sustained against a holder who was not a purchaser for value and without notice and against trustees in bankruptcy, on the theory that the trustee had no better right than the bankrupt. Most of the cases decided since that date have followed the same rule without apparently taking into consideration the effect of the amendment which gives to the trustee the rights of a lien creditor as of the date of filing the petition, but there are cases expressly holding that the rights of an equitable lienor are inferior to the rights of a trustee in bankruptcy."

Examination of the cited authorities convinces the court that where, prior to the bankruptcy, the holder of an equitable lien has taken custody and control of the property, and has appropriated it as security for the payment of his debt in such a manner that the property can be clearly identified, the equitable lien must be recognized as superior, excepting in those cases where it appears that the rights of creditors without notice of the equitable lien have intervened. In Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275, it was plainly held that under the amendment of 1910 the trustee in bankruptcy takes the status of a creditor holding a lien as of the time at which the petition was filed and not as of a time anterior to the initiation of the bankruptcy proceedings. In the case of In re Simpson (D.C.) 31 F.(2d) 317, where the mortgagee, under a chattel mortgage valid between the parties, had taken possession of the mortgaged property with consent of the mortgagor prior to adjudication, he was held to be entitled to retain possession as against the trustee in bankruptcy and general creditors.

The Sixth Circuit Court of Appeals recognized the distinction and applied the pertinent rule in the case of Marshall v. Roettinger, 294 F. 158, 161. There it was said:

"This court held in Gage Lumber Co. v. McEldowney, 207 F. 255, 124 C.C.A. 641, that where the purchaser had advanced large sums of money upon the purchase price for the convenience of the seller in meeting the expenses necessary to the manufacture of the lumber, which was the subject-matter of the contract, and that where in pursuance of this arrangement lumber was cut and piled in separate piles from other lumber on the yards of the seller, and intended by the seller to be applied and shipped in fulfillment of the contract, that the res was sufficiently identified to charge the lumber so piled and segregated from other lumber with an equitable lien for the amount of the advancements. Substantially the same state of facts was involved in Greif Bros. Cooperage Co. v. Mullinix [(C.C.A.) 264 F. 391], supra.

"These authorities are by no means in conflict with the established rule that no equitable lien will attach to unidentified or unsegregated property of the bankrupt passing into the possession and control of the trustee in bankruptcy, even where the contract apparently contemplates such a lien. It necessarily follows that, in the absence of a contract intending or purporting to create a lien, a court of equity will not, merely out of general consideration, declare a lien upon an unidentified res to the prejudice of equal equities of other creditors. National City Bank v. Hotchkiss, 231 U.S. 50, 57, 34 S.Ct. 20, 58 L.Ed. 115; Porter v. White, 127 U.S. 235, 8 S.Ct. 1217, 32 L.Ed. 112; Security Warehousing Co. v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789; In re Stiger, 209 F.

148, 126 C.C.A. 96; In re Imperial Textile Co. (D.C.) 239 F. 775; In re Morris Bros., Inc. (D.C.) 282 F. 670, 672."

The Bankruptcy Act thus applied accords with the demands of essential justice. Petitioner, under an agreement for security upon the supplies, products, and proceeds of sales, through a long period of adversity, provided the means to enable the business at Grand Rapids to continue without the necessity for obtaining credit elsewhere for supplies and pay rolls. There is no evidence of attempted deception or concealment so far as rights of general creditors are involved. Petitioner having taken possession of the property in controversy prior to the attaching of the trustee's statutory lien, enforcement of the agreement is not inequitable.

The order of the referee in bankruptcy will accordingly be affirmed.