## SYNDICATED CONST. CORPORATION v. ROSS et al.

### No. 715.

Municipal Court of Appeals for the
District of Columbia.

Dec. 1, 1948.

Motion for Modification Denied Dec. 13, 1948.

W. C. Sullivan, of Washington, D. C., for appellant.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiffs purchased from defendant a house and lot under a written sales agree-

ment. Before settlement of the purchase the parties entered into a supplemental written contract whereby defendant agreed to construct on the lot for $500 a six-foot retaining wall with a three-foot iron fence on top. Although the full price was paid, defendant erected only a four-foot wall without any fence. Plaintiffs thereupon sued to recover $500 damages. The jury awarded a verdict for plaintiffs for only $56.60. Defendant has appealed. Plaintiffs did not enter an appearance on the appeal and have filed no brief.

The defense to the action was that subsequent to the making of the contract for the erection of the wall and fence defendant was refused permits to erect a six-foot wall and fence and that defendant, in lieu of the higher wall and fence, had sodded the yard instead of seeding it and had installed a hot water instead of a hot air heating system and that plaintiffs had agreed to the substitution. As evidence that nothing was owing to appellees, appellant introduced a communication addressed to it and other interested parties and signed by appellees which provided:

"Washington, D. C.
"August 23, 1947

"Gentlemen:

"We have made thorough inspection of the house on Lot 8 in Square 5958 known as 742 Congress Street, S. E., Washington, D. C. heretofore purchased by us from Syndicated Construction Corporation and we hereby accept the said house as it is, without reservation, and are fully satisfied with said house in every particular."

In connection with this document one of appellees was permitted to testify that he signed it "with the understanding that it related only to the house on the lot and did not include the wall or the fence or anything else." There was no explanation as to how this "understanding" was arrived at and so far as appears such "understanding" represented merely the mental processes of the witness. The admission of this testimony was objected to at trial and is now assigned as error on the ground that it constituted an attempt to vary a written instrument by oral testimony.

The second error assigned is that the trial court in the course of its charge to the jury stated "that the jury had a duty to probe the minds of the parties as to the meaning of the document dated August 23, 1947." Appellant objected to this portion of the charge, whereupon the trial court reiterated and emphasized "the duty of the jury to probe the minds of the parties." Objection was again made. The statement of proceedings and evidence before us, approved by the trial judge, gives no amplification or explanation of this instruction.

 . We believe that the trial court erred in admitting the evidence we have outlined above and in instructing the jury as it did. The rules of law in this connection have been well summarized in an oft-quoted opinion by Learned Hand, formerly judge of the United States District Court for the Southern District of New York and now chief judge of the United States Court of Appeals for the Second Circuit, as follows:

"It is quite true that we commonly speak of a contract as a question of intent, and for most purposes it is a convenient paraphrase, accurate enough, but, strictly speaking, untrue. It makes not the least difference whether a promisor actually intends that meaning which the law will impose upon his words. The whole House of Bishops might satisfy us that he had intended something else, and it would make not a particle of difference in his obligation. That obligation the law attaches to his act of using certain words, provided, of course, the actor be under no disability. The scope of those words will, in the absence of some convention to the contrary, be settled, it is true, by what the law supposes men would generally mean when they used them; but the promisor's conformity to type is not a factor in his obligation. Hence it follows that no declaration of the promisor as to his meaning when he used the words is of the slightest relevancy, however formally competent it may be as an admission. Indeed, if both parties severally declared that their meaning had been other than the natural meaning, and each declaration was similar, it would be irrelevant, saving some mutual agreement between

them to that effect. When the court came to assign the meaning to their words, it would disregard such declarations, because they related only to their state of mind when the contract was made, and that has nothing to do with their obligations. This is, of course, a wholly different question from a preceding or subsequent agreement assigning an agreed meaning to any given words used in another contract."[1]

Under the circumstances, we deem it unnecessary to pass upon the other errors assigned.

Reversed, with instructions to award a new trial.

---

[1] Eustis Mining Co. v. Beer, Sondheimer & Co., D.C.S.D.N.Y., 239 F. 976, 984, 985. See also Hotchkiss v. National City Bank of New York, D.C.S.D.N.Y., 200 F. 287, affirmed 2 Cir., 201 F. 664, affirmed 231 U.S. 50, 34 S.Ct. 20, 58 L. Ed. 115; Soldano v. Holmes, D.C.Mun. App., 60 A.2d 535; Restatement, Contracts, §§ 20, 230, 231, 232; 3 Williston, Contracts, Rev. Ed., § 606.