

Luis A. Berrones and John T. Roache of Gardner, Carton & Douglas, Chicago, IL, for Plaintiff.

Victoria P. Hallock, Arthur Don and Christina Giorgio of D'Ancona & Pflaum, Chicago, IL, for Defendant.

**AGROINDUSTRIA NACIONAL, S.A., Plaintiff,**

v.

**HENRY BROCH & COMPANY, Defendant.**

No. 97 C 4059.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 8, 1997.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Agroindustria Nacional, S.A. ("Agrona") initially sued Henry Broch & Company ("Broch") in a simple goods sold and delivered Complaint, invoking federal jurisdiction on diversity of citizenship grounds and seeking judgment for $114,799.68 for apple juice concentrate sold by Agrona—purportedly to Broch.[1] Broch has responded with a Rule 56 motion for summary judgment, and the parties have submitted their memoranda, their affidavits intended to comply with Rule 56(e) and their statements intended to conform to the requirements of this District Court's General Rule ("GR") 12(M) and 12(N).

It became all too clear with Broch's response, which showed that it was not itself the buyer of the unpaid-for goods but was rather a broker—the agent for a disclosed principal—that Agrona could not stick with the assertions in its Complaint. Nothing daunted, Agrona then proceeded to alter its stance in its Rule 56 and GR 12(N) submissions. In light of that shift in Agrona's position, Broch's motion must be and is denied in the current posture of the case.

---

**1.** Although Agrona has split its allegations into four counts—labeled "Breach of Contract," "Account Stated," "Open Account" and "Goods Sold"—they all amount to the same thing. Indeed, that form of pleading (unfortunately utilized too frequently by too many practitioners) really does violence to the portion of Fed. R.Civ.P. ("Rule") 10(b) that authorizes separate counts only in expressly specified circumstances:

Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

Not only does that provision merely authorize but not require such separation, but it makes plain that there is no legitimate reason to create separate counts for different theories of recovery when a *single* transaction is at issue (as is true here).

Rule 56 motions are not a vehicle for the resolution of credibility issues (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)) ("it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence but to determine whether there is a genuine issue for trial"). At the same time there is some *limited* room under Rule 56 for the weighing of evidence, as *Anderson, id.* at 250–52, 106 S.Ct. at 2511 (citations omitted) has itself pointed out in equating the summary judgment standard with that under Rule 50(a):

> Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

\*     \*     \*     \*     \*     \*

The Court has said that summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

But the thing that saves Agrona at this stage of the proceedings is the requirement that in applying that concept for Rule 56 purposes the evidence must be looked at through a lens that (even though perhaps against the viewer's better judgment) is focused substantially in Agrona's favor. As the Rule 56 case law frequently puts it, and *St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997) (citation omitted) is only exemplary of that principle:

> Although the non-movant is entitled on a motion for summary judgment to have all reasonable inferences drawn in its favor, the court is not required to draw unreasonable inferences from the evidence.

So it is here. Agrona gets the benefit of all arguably reasonable favorable inferences, even though the malodorousness of a number of things that have been said by its affiants is obvious. Just one critical example bears separate mention.

Although the key issue here is of course the nature of the transaction in suit, both litigants have addressed some prior transactions between the parties as bearing on whether Broch itself was or was not the purchaser in this instance. In that respect Agrona's President Christobal Valdes Saenz ("Valdes") says in part (Aff.¶¶ 7, 9):

> 7. From time to time, Agrona has sold food product to Henry Broch & Company ("Henry Broch"), said sales arranged and facilitated by James H. McGaveston of Food Trade International S.A.
>
> 9. Agrona had sold food products to Henry Broch on prior occasions and had received payment directly from Henry Broch on prior occasions.

And to support that assertion, Valdes' Affidavit attaches Exs. A through D, each of them a photocopy of an Agrona "commercial invoice" that it had issued in connection with the shipment of one of its juice concentrates—apple, prune and pear.

Not to put too fine a point on matters, that bootstrapping assertion, based as it is entirely on Agrona's own post-order shipping confirmations, looks very much like a lie. First, it is worth observing that the first of Agrona's invoices is addressed to "HENRY

BROCH *INTERNATIONAL FOODS BRO-KERS* " (emphasis added), a characterization (1) that is not at all consistent with Broch being the actual purchaser and (2) that is totally in harmony with Broch's always-used sales memorandum (a photocopy of which is attached)—the latter being the selfsame document by which Broch confirmed the specific transaction that is now at issue. And relatedly, it is truly extraordinary for Agrona's Valdes to characterize Food Trade International, S.A. and its President James McGaveston ("McGaveston"), who consistently dealt with Broch on Agrona's behalf, as "an independent broker" (Valdes' Aff. ¶ 5) and "commissioned salesmen" (*id.* ¶ 6) who were "compensated . . . in the form of a two percent (2%) commission on all such sales" (*id.* ¶ 8),[2] even while at the same time Valdes magically (and mysteriously) purports to transform the unambiguously-labeled "3% commission" that is shown on *every one* of Agrona's commercial invoices—the very documents on which Agrona seeks to rely to portray Broch as a "purchaser"—into "a frequent buyer's discount of 3%, reflected on the invoices as a 3% 'commission.' " [3]

On the same subject of the purchaser v. broker dichotomy, Agrona also does not appear to have recognized the illogicality of its several references (McGaveston Aff. ¶¶ 7 and 8 and Valdes Aff. ¶ 15) to the notion that Irwin Price ("Price") of Broch purportedly assured McGaveston that "Broch fully guaranteed all payments to Agrona for sales made to Broch" (McGaveston Aff. ¶ 7). What, pray tell, is meant by a party "guaranteeing" payment of *its own* obligations? If such a statement *were* in fact made by Price (and of course an oral guaranty is unenforceable under the statute of frauds in all

events), it would really confirm that Broch was *not* itself the purchaser of the apple juice concentrate—as Agrona would now have it.

There is a good deal more that casts a substantial cloud on Agrona's responsive submissions, so much so that Broch's Reply to Agrona's GR 12(N) response has challenged many of Agrona's factual assertions as untrue and that Broch's R. Mem. 1 begins in this fashion:

> Plaintiff Agroindustria Nacional, S.A. ("Agrona") has failed to present any basis in fact or law by which it can survive Henry Broch & Company's ("Broch") motion for summary judgment. On the contrary, Agrona attempts to survive summary judgment by first changing its story and then submitting affidavits that can only be described as beyond belief and made in bad faith.[1]

---

[1]Broch will be filing a Rule 56(g) motion for bad faith affidavits.

Nevertheless it is possible that a factfinder may draw all of the potential inferences in Agrona's favor, as this Court must do (at least with respect to reasonable inferences) at this stage, rather than the factfinder's drawing what presently appear to be much more logical inferences the other way. And that being true, this case strongly resembles the situation that this Court dealt with 14 years ago in *G. Bauknecht GmbH v. Electronic Relays, Inc.,* 569 F.Supp. 404, 409–13 (N.D.Ill.1983), when it found itself compelled to deny a Rule 56 motion despite the dubiousness of a plaintiff's version of events.

Accordingly Broch's Rule 56 motion is denied. This ruling moots Agrona's Rule 56(f)

---

**2.** There is of course no question that McGaveston is indeed a broker, though based on the Agrona submissions his true "independence" of Agrona may be in doubt.

**3.** We seem to have been transported with Alice to Wonderland (Lewis Carroll, *Alice Through the Looking Glass,* ch. 6):

> "When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

> "The question is," said Alice, "whether you *can* make words mean so many different things."
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

But Humpty Dumpty failed the bar examination (see Judge Learned Hand's classic "twenty bishops" formulation of the objective standard of contract interpretation in *Hotchkiss v. National City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911)), *aff'd,* 201 F. 664 (2d Cir.1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913).

motion for the opportunity to engage in discovery in aid of its opposition to summary judgment.

As a final note, however, a word of warning seems to be in order. If a party does indeed engage in the creation of false issues of fact—if in this instance Agrona has falsely portrayed Broch as the actual purchaser (despite the crystal-clear statements to the contrary in Broch's sales memorandum form) in order to salvage Agrona's loss against a defunct purchaser—Agrona may be vulnerable to fee shifting or to contempt or other sanctions, not only under Rule 56(g) but perhaps on other bases as well. And if Agrona's counsel have knowingly participated in such a false portrayal, they too must be concerned as to potential liability, under 28 U.S.C. § 1927 or otherwise.

## EXHIBIT F

299782-DN

PRIMA PRINTING — GLENVIEW, IL 60025 — 729-8410

**HENRY**

# BROCH & COMPANY

**INTERNATIONAL FOOD BROKERS**

**SALES MEMORANDUM**

SUITE 225
THREE HAWTHORN PARKWAY
VERNON HILLS IL 60061-1420
TELEPHONE 708 816 6225
TELEFAX 708 816 6238
TELEFAX 708 816 7415

*If incorrect please advise at once. Otherwise this constitutes a firm sale.*

Pursuant To Your Authorization, We Confirm, As Brokers, The Following Sale:

Sold for Account

Date

Sold To

Order No.

Ship To

Buyers Order No.

Ship When

Prices F.O.B.

Ship Via

Terms

Sold Through

| Quantity | Article | Price |
|----------|---------|-------|
|          |         |       |

*Please be sure to mark our order number on your invoices*

Seller's standard terms guarantee goods conform to the United States Pure Food Laws and provide that Seller shall not be liable for any failure of or delay in performance caused by fire, flood, acts of war, riots, strikes, lockouts, slowdowns, disputes with workmen, civil commotion, combinations of workmen, governmental interference, mechanical failure of any kind or other cause majeure and in the event of delay of performance caused by any of the foregoing, the time for performance by Seller shall be extended sufficiently to enable Seller to perform after the cause of the delay has ceased. On all sales made F O B shipping point, we act as the agent of the Buyer if we pre-pay or arrange transportation or storage in transit or at destination. We are not liable for any transportation and storage charges or for any default, failure or delay of any kind Buyer assumes all risk of loss or damage in connection with the foregoing and releases and agrees to hold us harmless from all claims in connection therewith.
   This SALES MEMORANDUM evidences a BINDING CONTRACT between the Seller and the Buyer in which transaction we acted solely as BROKER For imported ingredient contracts whose selling price is based on duty rates, this Sales Memorandum is subject to cancellation by the Seller should there be a change in the ingredient's duty rate during the delivery period. We should be advised at once if incomplete or incorrect in any respect and any alterations or cancellations should be confirmed in writing to us by the Buyer or the Seller. If a more formal contract is executed this SALES MEMORANDUM shall be subordinate to it.

HENRY