## BURNETT v. FREDERICK.

### In re ARCADE DRUG CO.

(Circuit Court of Appeals, Third Circuit. March 10, 1920.)

#### No. 2516.

BANKRUPTCY ⟐⟐189—CHATTEL MORTGAGE WITHOUT CHANGE OF POSSESSION INVALID AS TO TRUSTEE.

Where the real purpose of a transaction, in form an absolute transfer by a drug company of a soda fountain with a lease back, was to give the lessor security for her alleged loan, on property which the debtor drug company still held in possession and never delivered, the lessor had no rights in the property as against the drug company's trustee in bankruptcy, under Bankruptcy Act, § 47a (2), Comp. St. § 9631.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Petition by Anna J. Burnett for proceeds of sale of property, opposed by Elliott Frederick, trustee in bankruptcy of the Arcade Drug Company. From an order denying the petition, petitioner appeals. Affirmed.

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. W. Stoner, Lowrie C. Barton, J. M. Stoner & Sons, and L. M. Alpern, all of Pittsburgh, Pa., for appellant.

Morris, Walker & Boyle and Abraham Seder, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

BUFFINGTON, Circuit Judge. In the store of the Arcade Drug Company, a bankrupt corporation of Pennsylvania, Frederick, as trustee, found a soda water fountain and other fixtures, which were subsequently claimed by Mrs. Anna J. Burnett. By agreement between her and the trustee, these claimed articles were sold by him without prejudice to her right to claim the proceeds. Accordingly, she later petitioned the court to direct payment to be made to her of the money realized from such sale. To this the trustee answered, denying her right thereto. The matter was sent to the referee, who took testimony, made the findings printed in the margin,[1] and denied Mrs.

---

[1] Prior to November, 1915, the petitioner and her husband, L. A. Burnett, whose principal business is that of an insurance agent, carried on, at their home, a certain mail order business, which was highly successful, and as they say, netted to them a large sum of money, to wit, some $50,000. According to their testimony, this mail order business was never wound up legally, nor any adjudication of what part of the moneys belonged to each of them, but they kept their funds together in a bank account, or accounts, which from time to time was drawn upon for the purchase of property which they, or one of them, desired to purchase, and thereupon the property was purchased, paid for, and, as they say, became the property of the one in whose name the deed or other evidence of title stood.

In November, 1915, Mr. Burnett purchased, from one Smith, Smith's interest in a corporation known as "Smith's Drug Store," which subsequently became the store of the Arcade Drug Company, the bankrupt in this case. In this transaction, L. A. Burnett, the petitioner's husband, acquired about 90 per cent. of the capital stock of the corporation in exchange for his equities in certain real estate, which he frankly states were all practically of no value whatever. The Smith Drug Company, at the time of the purchase of the capital stock by Burnett, was heavily involved financially, and Burnett paid about the sum of $7,000 on account of the indebtedness of the company, and obtained an agreement of extension of the debts not paid. It appears that the soda water fountain and other fixtures then owned by the Smith Drug Company, subsequently the bankrupt, were worn out, and thereupon L. A. Burnett, the petitioner's husband, undertook to purchase a new soda water fountain. The manufacturers whom he approached, Robert M. Green & Son, refused to sell to the Drug Company on account of its financial condition, but agreed to deliver to the premises of the Drug Company the soda water fountain, etc., under a bailment lease executed by L. A. Burnett. Thereupon such bailment lease was executed between L. A. Burnett and Green & Son, and the soda water fountain apparatus was delivered; L. A. Burnett giving his notes in payment for the installments of rent as they became due. These installments of rent were paid in the following manner: Mr. Burnett drew checks on the account of himself and his wife, representing the proceeds of the mail order business, to the Drug Company, and deposited them to the credit of the Drug Company in the Drug Company's bank, and the Drug Company's checks were sent to Green & Son in payment of said rent installments. These payments began about April 1, 1916, and continued until about January 31, 1917, when the entire rent, namely, $5,000, had been paid to Green & Son.

Mr. Burnett, the husband, in his testimony, calls these transactions in

Burnett's petition for payment to her of the proceeds of the sale of the fixtures, in that regard holding:

"The question, therefore, is whether, under the facts and circumstances in this case, the title to the fixtures passed to the petitioner as against the trustee clothed with the rights conferred upon him by section 47a (2) above quoted. While the title papers on their face show absolute transfer by the Drug Company to the petitioner, and lease by the petitioner to the Drug Company, the referee is compelled to the conclusion that the real transaction, although in the form of an absolute transfer, and then a lease back, was in reality simply an attempt to secure the petitioner for her loans by paper title without change of possession (assuming that it was in a sense her money that went through the Drug Company to Green & Son), and this the law does not permit. Clow v. Woods, 5 S. & R. 275, 9 Am. Dec. 346; Barlow v. Fox, 203 Pa. 114, 52 Atl. 57."

On certificate to the court below, it approved the action of the referee, whereupon this appeal was taken.

Its study of the proofs satisfies this court that the referee properly held that the real transaction, although in form an absolute transfer

---

making payments as "passing them through the books of the Drug Company," which is hardly an accurate statement of the depositing of money in the Drug Company's bank, and paying it out by checks of the Drug Company. It may also be observed that, in this process of passing this through the books of the company, he, as bookkeeper, makes the entries on said books as advances "to pay for new fixtures." These transactions are, in legal effect, loans to the Drug Company, no matter what Mr. Burnett may think, or indeed may have thought, he was doing at the time.

At all events, the condition in regard to the fixtures on January 31, 1917, was, that they had been delivered into the premises of the Drug Company by the manufacturers, and that they had been paid for in the manner already pointed out. Mr. Burnett was asked if, at that time, his wife was not an unsecured creditor of the Drug Company to the extent of $5,000, assuming his construction of her position. His reply was that he thought the fixtures were some security.

However, it appears that on January 31, 1917, the bankrupt company held a meeting of the board of directors, at which, after a recital: "In order to pay for improvements made and take care of new bills payable given by L. A. Burnett personally, the new fountain, and the new fixtures, as they came due, it was necessary to borrow the following amounts, including the payments above referred to aggregating $5,000, and it was resolved that the company give a bill of sale to Anna J. Burnett, including and covering all new fixtures which have been acquired, and for which this money was used, said new furniture and fixtures to be and remain the property of said Anna J. Burnett; and it was further resolved that this company lease the fixtures, etc., from Anna J. Burnett for a period of five years, at a rental of $1,000 per year, and the treasurer is hereby authorized and directed to enter into and execute such a contract for the company."

On February 5, 1917, the company and petitioner entered into an agreement reciting: "Whereas, the party of the first part, in the remodeling of its store at the corner of Wood and Franklin streets, in the borough of Wilkinsburg, Pennsylvania, and in the fitting and furnishing thereof, required a new soda fountain, equipment, furniture, fixtures, etc.; and whereas, the Drug Company was without funds with which to make payments for said articles, etc.; and whereas, Anna J. Burnett advanced the following moneys to make payment for said articles, to wit, the different sums aggregating $5,000, and said moneys had paid for the following property, to wit, the articles claimed in the petition: The said Drug Company hereby assigns said articles to said Anna J. Burnett, and said Anna J. Burnett leases the same to the Drug Company." And this is the contract under which the petitioner seeks to recover."

with a lease back, was not such in fact, but that the actual purpose and the real transaction was to give Mrs. Burnett security for her alleged loan, on property which the debtor still held in possession and never delivered. After the transaction, the possession remained just as it did before, nor was any notice of the transaction given in any way to any one.

Under these facts, the referee committed no error in denying Mrs. Burnett's petition. When the bankruptcy occurred, the bankrupt company was indebted (although the time for the payment of their claims had previously been extended to a date subsequent to the filing of the petition for adjudication) in a considerable amount to creditors whose debts antedated the Burnett transfer and lease. If one of these creditors had eventually secured judgment against the Drug Company, and had issued an execution thereon, and levied on these fixtures, and if Mrs. Burnett had given notice of the unrecorded and unnoted lien which the referee had found the facts of the case alone amounted to, would the execution of the Drug Company's creditor or this attempted lien of Mrs. Burnett's have prevailed? Under such facts, the attempted secret lien must yield, under the laws of Pennsylvania, to the superior right of the creditor's execution levied on the goods in the open, unchanged, and credit-inviting possession of the debtor. Such being the superior right of an execution creditor of the Drug Company to this property, when the bankruptcy occurred, sections 47a and 70e of the Bankrupt Law (Comp. St. §§ 9631, 9654) vested the right of the execution creditor in Frederick, the trustee.

The order of the court below is therefore affirmed.