## PENN LUMBER CO. v. WILSON et al.

Circuit Court of Appeals, Fourth Circuit. June 12, 1928.

No. 2694.

1. Liens ⊜⊸7—To have equitable lien, it must appear parties set aside certain property as security for particular debt.

In case of equitable liens, it must appear that it was intention of parties that certain property should be set aside and appropriated as security for particular debt, that such property was set aside and appropriated for this particular purpose, and that it can be clearly identified as property parties had in mind.

2. Bankruptcy ⊜⊸188(3)—As respects equitable lien, title of trustees to proceeds of lumber held superior to that of buyer advancing notes, later paid for lumber not shipped (11 USCA § 75).

Under 11 USCA § 75, title of trustees in bankruptcy of lumber company to proceeds from sale of lumber *held* superior to that of buyer giving notes in advance for lumber not shipped, which notes lumber company discounted and buyer paid under compromise settlement, since there was no such intention to give security on any specially designated property as is necessary to create an equitable lien.

3. Bankruptcy ⊜⊸188(3)—As respects equitable lien, buyer should not have compromised suit on notes, without notifying trustees of suit.

As respects claim of equitable lien, where buyer gave notes in advance for lumber to be shipped, and lumber was not shipped before seller was adjudicated a bankrupt, buyer should not have compromised suit brought against it on notes by bank, at which bankrupt discounted same without notifying trustees in bankruptcy that suit was pending and giving them opportunity to defend.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; D. Lawrence Groner, Judge.

The Hamilton Ridge Lumber Corporation was adjudicated a bankrupt, and John T. Wilson and others were appointed trustees in bankruptcy. The Penn Lumber Company filed a petition for a preferred claim, and the referee held against the claim, and the court confirmed his findings, and entered a decree denying the claim, and claimant appeals. Affirmed.

R. Carter Scott, Jr., of Richmond, Va. (Scott, Lloyd & Scott, of Richmond, Va., on the brief), for appellant.

Aubrey R. Bowles, Jr., of Richmond, Va. (McGuire, Riely & Eggleston, and Henry C. Riely, all of Richmond, Va., on the brief), for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. The Hamilton Ridge Lumber Corporation was a Virginia corporation, operating a sawmill and lumber plant in South Carolina. It was adjudicated a bankrupt in the District Court of the United States for the Eastern District of Virginia, on June 1, 1923, and the appellees herein were appointed trustees in bankruptcy for the corporation. The appellant, the Penn Lumber Company, is a corporation engaged in the business of buying and selling manufactured lumber, with its place of business located in the city of Philadelphia, Pa. Appellant's business relation with the bankrupt corporation began in July, 1921, and continued to the date of the Hamilton Ridge Lumber Corporation's bankruptcy. In July, 1921, the Penn Company entered into an agreement with the Hamilton Company whereby the Penn Company agreed to make certain advances to the bankrupt, in return for which the bankrupt was to furnish the Penn Company lumber upon orders to be given. These advances were made in the shape of notes (generally referred to in the record as acceptances) maturing in the future and made payable to the bankrupt, and in pursuance of this arrangement and between the date of its beginning and the beginning of bankruptcy, the Penn Company executed and delivered to the bankrupt its notes for sums aggregating $178,808.78. Between the date of the agreement and April 13, 1923, the Penn Company received shipments of lumber from the bankrupt of the value of $139,779.32, which practically rendered the account even as of that date.

On April 13, 1923, the Penn Company agreed to assist the bankrupt further under the agreement, and on that date it executed and delivered to the bankrupt corporation

its five notes, maturing in the future for a sum aggregating $39,000. Although orders, specifying the grades and sizes of the lumber to be shipped the Penn Company, as well as the prices for the lumber, sufficient to cover the aggregate of the amount of the five notes of April 13, 1923, had been delivered to the bankrupt by the Penn Company prior to the date of bankruptcy, and such orders were in the hands of the bankrupt at that date, the Penn Company received no shipment from the bankrupt between April 13, 1923, the date of the five notes, and the date of the bankruptcy.

The notes of April 13, 1923, were delivered to the bankrupt with the understanding that they would be paid by shipments out of a large quantity of lumber, which had already been manufactured, and which was then upon the bankrupt's yards. Neither at that time nor at any later date was any specific lumber set aside and appropriated to the particular use of meeting the payments of these notes, or either of them, nor did the Penn Company take charge, nor was it ever put in possession, of any lumber whatsoever for this purpose.

As was the case of all other notes that the Penn Company had given the bankrupt, these five notes were discounted by the bankrupt, at the American National Bank of Richmond, Va., and at the time of the bankruptcy that bank was holder and owner of the notes. After the five notes of April 13, 1923, had become due, the American National Bank instituted suit upon them against the Penn Company, which litigation was compromised, after the bankruptcy of the Hamilton Ridge Company by the payment by the Penn Company to the American National Bank of $19,-000. This compromise was effected by the Penn Company without any notice by it to the trustees of the bankrupt, nor was any opportunity given to the said trustees to defend said suit. The lumber on the yards, in an amount in excess of 5,000,000 feet, was sold by the trustees in bankruptcy, free of all claims; it being agreed that any litigation with regard thereto would be transferred from lumber to the fund arising from its sale.

The Penn Company filed its petition in the bankruptcy proceedings, alleging that it was entitled to a preferred claim on the sum arising from the sale of the lumber, and that it should be preferred in the sum of $19,000, as against the general creditors of the bankrupt. The referee, in an able opinion, held against the claim of the Penn Company, and the judge below, adopting the opinion of the referee, confirmed his findings,

both of fact and law, and on July 3, 1927, entered a decree denying the claim of the Penn Company, from which decree this appeal was taken.

The Penn Company made no loan of money to the bankrupt, but simply made it possible for the bankrupt to borrow the money elsewhere, and the money so borrowed went into the stream of borrower's general property, and was used by the bankrupt for the general purpose of conducting its business.

There is no dispute as to any finding of fact, and the question to be considered is purely one of law. It is contended on behalf of the Penn Company that its advances to the bankrupt constituted an equitable charge in the nature of an equitable lien on the lumber on the yards of the bankrupt, and that under the South Carolina law it is enforceable and is superior to the rights of the trustees. The attorneys for the appellant rely chiefly on the case of Hurley v. Atchison, T. & S. F. R. Co., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729, and cases there cited. A careful analysis of the Hurley Case leads to the conclusion that it is not in point. As was said by Mr. Justice Holmes in the case of National City Bank v. Hotchkiss, 231 U. S. 50, 34 S. Ct. 20, 58 L. Ed. 115, the Hurley Case "stood on the peculiar facts of the case, which were held to point to an identified res and give an immediate claim against it."

In the National City Bank Case one of the syllabi is as follows: "Although a loan may be made for a specified purpose, if the lender places it in the stream of the borrower's general property, there is no right of subrogation." And Mr. Justice Holmes goes on to lay down clearly the rule, that the establishment of a lien of this character can only be accomplished where the facts will plainly justify such a conclusion.

[1] It is clearly the rule in the case of equitable liens that it must appear that it was the intention of the parties that certain specified property should be set aside and appropriated as security for the payment of a particular debt, that such property had actually been set aside and appropriated for this particular purpose, and that it can be clearly identified as the property the parties had in mind at the time. National City Bank v. Hotchkiss, supra; Marshall v. Roettinger (C. C. A.) 294 F. 158. In this latter case the Hurley Case was also discussed, and we think properly distinguished with regard to its application to a situation similar to this one.

The Hurley Case was decided prior to the

passage of the amendment of 1910 to the Bankruptcy Act (11 USCA § 75), vesting trustees with all rights, remedies, and powers of a lien creditor. We can find no cases decided since the passage of this amendment that sustains the position taken by counsel for appellant in this case. This court, in a recent case (Hamilton Ridge Lumber Sales Corporation et al. v. Wilson et al., decided April 10, 1928, 25 F.[2d] 592), in dealing with a question arising out of this same bankruptcy, has discussed the authorities relating to liens of this character, and there a claim of a similar nature to the one here was held not to be a lien on this fund.

It cannot be said that the money advanced by the Penn Company in any way helped to create the property, the sale of which produced the fund in question, because the lumber was already on the yard at the time notes were given, and the claim of the Penn Company is not superior in this respect to that of any other creditor whose debt was created at that time or subsequently. It clearly appears that no particular lumber was ever designated and set apart for the purpose of filling the orders of the Penn Company.

In Hayes v. Gibson (C. C. A.) 279 F. 812, 22 A. L. R. 1372, on the question of the rights of trustees in bankruptcy, the court, after quoting the amendment of 1910, says:

"In a contest between the trustee, having such a standing, and the equitable lienor, who has the superior title? While an equitable lien arising from express contract, as here, may be enforceable against the specific property embraced in the contract in the hands of the contractor and subsequent purchasers and incumbrancers with notice, *it may not be enforced against prior incumbrancers or subsequent incumbrancers without notice.* In re Ronk (D. C.) 111 F. 154; Morgan, et al., v. First National Bank of Mannington et al., 145 F. 466, 76 C. C. A. 236; Moore v. Green et al., 145 F. 472, 479, 76 C. C. A. 242. *The trustee belongs to the latter class.*" (Italics supplied.) See, also, In re Traut's Estate (C. C. A.) 297 F. 458; Marshall v. Roettinger, supra; Burnett v. Frederick (C. C. A.) 263 F. 681; Herritt v. Clark (C. C. A.) 247 F. 100.

"There can be no doubt but that, if a levy had been made upon this stock of goods under a judgment, the petitioner's claim could not have been maintained against such a levy. As the trustee occupies the same position such a creditor would have occupied, the result must be the same. Potter Mfg. Co. v. Arthur, 220 F. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268." Bell v. Shaw (C. C.

A.) 230 F. 976. See, also, Scandanavian-American Bank v. Sabin (C. C. A.) 227 F. 579.

[2] In this case there was no advance of money, but a giving of notes that the bankrupt discounted, and there was no such intention to give security on any specifically designated property as is necessary to create an equitable lien. The Penn Company simply trusted the bankrupt to fulfill its part of the bargain, and had no security other than its confidence that the bankrupt would do this. Whether tested by the general law or the law of South Carolina, the title of the trustees of the fund is superior to that of the Penn Company.

[3] The Penn Company was also clearly wrong in compromising the suit brought against it without notifying trustees that the suit was pending, and giving them an opportunity to defend. There is no such situation here as would appeal to the conscience of a court of equity, so as to require it to give the appellant any prior lien upon the fund in question.

There was no error in the decree entered by the court below, and the same is accordingly affirmed.