### KETTERER v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 7007.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1936.

Henry Eastman Hackney and H. M. Buck, both of Uniontown, Pa. (Richard D. Bovington, of Cleveland, Ohio, Orville Brown, of New Castle, Pa., and Henry E. Hackney, Jos. W. Ray, Jr., and Shelby, Hackney & Ray, all of Uniontown, Pa., on the brief), for appellant.

C. M. Horn, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and F.

J. Perkins, all of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The United States Fidelity & Guaranty Company as surety on the bond of a county treasurer in Pennsylvania having reimbursed the county for loss of funds on deposit with the now defunct Citizens National Bank of Ellwood City, Pa., sought to impress an equitable lien on securities of the insolvent bank pledged with a Cleveland bank to secure loans. The right of the surety to be subrogated to the claim of the treasurer is conceded. The Cleveland bank being a necessary defendant, suit was begun in an Ohio court, and upon its removal to the court below the Pennsylvania bank's receiver waived process and subjected himself to the court's jurisdiction. The decree sustained the lien. The Cleveland bank, being a mere stakeholder and unwilling to join in appeal, the receiver procured a severance and is here as sole appellant.

For more than three years the treasurer of Lawrence county, Pa., had been depositing county funds with the Citizens National Bank. The deposits were secured by surety bonds and pledges of the bank's collateral with a Pittsburgh bank as trustee under written agreements wherein the pledgor retained the right of substitution as long as the value of the collateral was maintained. In April and again in June of 1931, the treasurer's deposit account having been greatly reduced, she consented in writing to the release of a substantial portion of the collateral by the trustee. Of the released collateral, bonds to the amount of $60,000 were deposited with the National City Bank of Cleveland, and were later pledged to secure loans made by the Cleveland bank to the Pennsylvania bank.

In July, 1931, the officers of the Pennsylvania bank requested the treasurer to increase her deposits. She agreed to do so if amply protected, and the officers promised to put up bonds as collateral for that purpose. In reliance thereon, substantial deposits were later made by the treasurer in July and August of 1931, but no bonds or securities were ever actually pledged and no new pledge agreement was executed. The treasurer repeatedly requested the bank for a list of bonds pledged as security, but none was ever furnished. On November 2, 1931, the bank closed its doors, and passed into the hands of a receiver. When the bank closed the Cleveland bank held its bonds of the par value of $121,000 as collateral for loans of $45,000 made to it by the Cleveland bank in October, 1931. On October 24th, eight days before it failed, the Pennsylvania bank authorized the Cleveland bank by letter "to hold all bonds owned by this bank now in your possession and not in use by you as collateral for loans made to this bank, or bonds not needed as collateral for future loans which you may make to this bank, as collateral to the county treasurer of Lawrence County, Pennsylvania, for funds deposited by said treasurer in this bank." The securities pledged with the Cleveland bank were worth more than the indebtedness due it, and it is upon the equity that the surety asserts an equitable lien.

The defense is that there was no express contract presently creating a lien upon identified or identifiable securities in July, that the letter of October 24th did not sufficiently identify specific securities to create such lien, and that, if so, the appropriation was made at a time when the bank was insolvent to the knowledge of its officers and therefore void under Rev. St. § 5242, title 12, U.S.C.A. § 91, printed in the margin.[1]

While equity views transactions of this nature upon the broadest equitable principles, and does not hesitate to effectuate their actual intent honestly made without much restraint as to formality or procedure, Gage Lumber Co. v. McEldowney, 207 F. 255 (C.C.A.6), and while it looks at substance and not at form, Hurley v. Atchison, Topeka, & Santa Fe Ry. Co., 213 U.S. 126, 29 S.Ct. 466, 53 L.Ed. 729, on the ground that equity regards as done that which ought to have been done, 3 Pomeroy

[1] "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, * * * made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another * * * shall be utterly null and void."

Equity (4th Ed.), § 1235, yet in order that a lien may arise the agreement must deal with some particular property either by identifying it or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given, or transferred as security for the obligation. Pomeroy, supra; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; United States v. Butterworth-Judson Corp., 267 U.S. 387, 45 S.Ct. 338, 69 L.Ed. 672; Marshall v. Roettinger, 294 F. 158, 161 (C.C.A.6); Penn Lumber Co. v. Wilson et al., 26 F.(2d) 893, 894 (C.C.A.4). So, a general promise to give security in the future is not enough. The agreement out of which an equitable lien is to arise must purport to give an absolute present right, "Not to promise, but to transfer." Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 659, 56 L.Ed. 995. This does not mean that the property to which the lien attaches must necessarily be in existence or already segregated from other property, for it may attach to unmined coal, as in Hurley v. Atchison, Topeka & Santa Fe Ry. Co., supra, or to lumber not yet manufactured, as in Gage Lumber Co. v. McEldowney, supra. Nor does it mean that physical possession of the res must pass to the lienholder, nor that his present right may not be qualified by the reserved right of the lienee of partial withdrawal and substitution of security, as in Sexton v. Kessler & Co., supra. But as we understand the principles governing recognition of equitable liens, there must be, if there is no segregation of pledged property, specific appropriation of it as security for the asserted debt, a present intention to transfer it, with such description as either identifies it or makes it capable of identification.

█ There was no suggestion in the July interview of any specific bonds to be pledged, and indeed none is claimed. Clearly there can be no implication that the bank intended to secure the treasurer with the collateral released by the Pittsburgh bank, for the very request for its release indicated another use for it. Nor was there anything more at the time than a general promise to give security in the future. This was not "the more limited and cautious dealing" which in Sexton v. Kessler & Co., supra, distinguished the transaction there from a general promise. It was

so understood by the treasurer, for otherwise she would not have persisted in her request for a list of pledged securities or tried to withdraw the deposit when the list was not furnished. "The doctrine of equitable liens has been liberally extended in modern times to facilitate mercantile transactions. But it has been done to give effect to the intention of the parties to create specific charges and that that intention might be justly and effectually carried out. But the courts are not authorized to find the intention when none existed." In re Interborough Consolidated Corporation, 288 F. 334, 344, 349, 32 A.L.R. 932 (C.C.A. 2), certiorari denied 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215. Cf. Beaver Board Cos. v. Imbrie, 296 F. 670 (C.C.A.2); In re Magrill, 22 F.(2d) 757, 759 (C.C.A.5). The breadth here sought to be given to the Hurley Case, supra, was rejected by the Supreme Court itself in National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 22, 58 L.Ed. 115, where it was said that the Hurley Case "Stood on the peculiar facts of the case, which were held to point to an identified res and give an immediate claim against it," and the same distinction was noted by us in Marshall v. Roettinger, supra, and by the court of the Fourth circuit in Penn Lumber Co. v. Wilson, supra.

We come then to the bank's letter of October 24th. It authorized the Cleveland bank to hold the bonds then in its possession and not in use as collateral for loans already made or not needed as collateral for future loans as collateral for the county treasurer's deposit. Without regard to any question of indefiniteness in the designation of the collateral, and we do not subscribe to the view that there could be no appropriation of it for the intended purpose unless it was free from the debt to the Cleveland bank, we think the letter was ineffective to create a lien. It contained a reservation of the right to have excess collateral, without limitation as to amount or time, and without the consent of the lienholder, held as collateral for "future loans." This reservation clearly destroyed the purported appropriation of the securities to the protection of the treasurer's deposit. Subject only to the right of the Cleveland bank to collect its existing debt out of the security, it retained for the Pennsylvania bank complete dominion and control of the collateral as security for future loans. It subordinated the rights of the treasurer without limit to its own fu-

ture necessities, and such reservation must not be confused with the reserved right to withdraw and substitute securities as in Sexton v. Kessler & Co. There the reservation was in recognition of the superior right of the lienholder, whose security must in nowise be impaired. That the distinction is vital was recognized not only in the Sexton Case, where it was pointed out. that a reservation of full control by the mortgagor might well prevent the effective creation of a lien, but also in Benedict v. Ratner, 268 U.S. 353, 363, 364, 45 S.Ct. 566, 569, 69 L.Ed. 991, where it was held that the reservation of dominion inconsistent with the effective disposition of title, does not create a lien, and where it was said that "Permission to use the proceeds to furnish substitute collateral 'provides only for a shifting of the lien from one piece of property to another taken in exchange.' * * * On the other hand, if the agreement is that the mortgagor may sell and use the proceeds for his own benefit, the mortgage is of no effect."

Aside from this, the letter of October 24th as an appropriation of security was void by reason of section 5242 Rev.St., supra. It seems clear from the record, and is not in fact seriously disputed, that on October 24th the bank was insolvent, and that its officers knew it. They had proposed to write up the value of their real estate so that a better showing might be made. The bank had been repeatedly warned by the office of the comptroller as to its condition. Eight days later it closed and was put into receivership. It is urged upon the authority of cases typified by Burrowes v. Nimocks, County Treasurer, 35 F.(2d) 152 (C.C.A.4), that the appropriation of the security was merely in pursuance of the terms of a valid lien agreement made in July when the bank was solvent, and relates back to that time. There was, however, no agreement in July for a present transfer of identified or identifiable collateral, and the Burrowes case is not in conflict. There was there not only complete identification, but also segregation of securities while the debtor was solvent. The holding was that the physical delivery of the pledged notes was in consummation of a valid existing lien theretofore created. Likewise may other references be distinguished. There was here neither segregation nor identification of security prior to insolvency.

The decree is reversed, and the bill will be dismissed.