FIRST NATIONAL BANK OF SIOUX RAPIDS, Appellee, v. STELLA TORKELSON et al., Appellants.

No. 39856.

JANUARY 21, 1930.

*Charles E. Pendleton,* for appellants.

*Whitney, Whitney & Stern* and *E. M. Duroe,* for appellee.

DE GRAFF, J.—On the 10th day of December, 1910, L. A. Torkelson died testate, and left surviving him his widow, Stella Torkelson, and six children, Lawrence, Olive, Eilett, Howard, Joyce, and Bendix.  His will was executed May 28, 1910, and disposed of all his property, both real and personal, to the above-named widow and his children. In the second paragraph of his will he devised to his wife, Stella, "one-third interest in all my real, mixed or personal property of which I may die seized." In the third paragraph he devised to his children, "each share and share alike, their pro-rata share, dividing equally the remaining two thirds of my real, mixed or personal property, of which I may die possessed." In the fourth paragraph thereof he appointed his wife, Stella, and his brother, B. J. Torkelson, "as my joint executors of this will and trustees to carry out the terms and conditions thereof without bond," and further provided that, in case of the death of either or both of such executors, the district court of Buena Vista County "is hereby requested, and shall have power, and is hereby directed to appoint, create and confirm as executor or executors to act in lieu of the executors named herein." In the fifth paragraph of said will he gave his said executors full and absolute and complete power and authority to collect all debts due me, to release all mortgages when paid, to make, execute and deliver deeds or mortgages to the property "of which I may die possessed giving them and confirming in them full and absolute power to sell and convey as in their best judgment, jointly shall appear for the best interests of my estate, demanding and desiring of them that they shall exercise their best judgment in the preservation and care of such estate and I authorize them to invest the proceeds or income or rents due therefrom as they may deem best, or to use same for the support of my wife and children as may be necessary, giving them authority to convey as absolute a title to such real estate as I may leave, and of which I am possessed of title, as though I were delivering same, it being my express will and devise that my wife, as aforesaid, inherit one third in value of all the property of all kinds that I leave, and that my children inherit jointly and respectively, equal shares of the two thirds of all my property of every kind that I leave, and it is my will,

devise and bequest that this shall convey and confirm such title and shall be my will so conveying absolutely all property I leave, situated either in the state of Iowa, South Dakota, North Dakota, or any other state in the United States, subject to the control and conservation of the same in the hands of my trustees.''

This will was duly probated, and Stella Torkelson and B. J. Torkelson, as executors, qualified as such.

We first ask, what was the testator's intent? It is presumed that the testator appreciated the effect of the words used by him. The testator knew that he was the title holder of some 400 acres of Iowa land, and other land in other jurisdictions. He must have known that, in order to distribute the proceeds according to his will, a partition suit was necessary, as the interests devised were undivided interests. He intended to give his widow an immediate vested one-third interest in all of his real estate, to become effective upon his death, and intended to give his children an immediate vested interest in equal parts of the remaining two thirds. He devised these interests in express, unambiguous language. The testator's words clearly devise a fee simple, consequently it could not have been his intent to create a trust, but simply an intent to create a power. It was not made imperative that the appointees of that power convey or incumber the real estate. It would be meaningless and a useless thing for the testator to have given to his wife and his brother a power by appointment to convey her own vested interest. In short, he did not do so. The will did give full legal and equitable title in his property to the widow and the children, with only a grant of a power to the appointees, which power was never exercised. See *Ross v. Ayrhart*, 138 Iowa 117. The power given was to terminate when ''any child became of lawful age.'' All of the children were of lawful age, except two, when Torkelson's will became effective, and all were of full age when this action was commenced, February 10, 1928. It is the well recognized rule that, when a gift to the first taker is absolute, the estate is exhausted, and nothing remains of which disposition can be made. *Bradford v. Martin*, 199 Iowa 250.

We now pass to the facts which constitute the basis for the instant action. It is a foreclosure action, involving two written

instruments. Division 1 of the petition prays for judgment on a promissory note signed by the defendant-appellant Stella Torkelson, in the sum of $8,462, and for the foreclosure of a trust deed executed by the said Stella Torkelson to plaintiff upon the undivided interest she then held in the real property involved in this suit. Division 2 of the petition asks for judgment upon a promissory note in the principal sum of $4,000, executed and delivered to plaintiff by the defendant-appellants Eilett, Joyce, and Bendix Torkelson and Olive Torkelson Anderson, and for the foreclosure of the mortgage signed by these appellants upon their undivided interest in the real property involved in this action. In brief, Stella at this time owned a five-ninths interest, and the other appellants owned a four-ninths interest in the Iowa real estate devised by the testator.

I. The First National Bank of Sioux Rapids is the plaintiff-appellee. It appears that the widow, Stella Torkelson, on June 2, 1921, executed and delivered to the said bank her trust deed, for the purpose of securing her indebtedness to said bank. This indebtedness at that time was evidenced by her promissory note. The trust deed was filed for record, and covers her undivided interest in the real property involved herein, to wit, 400 acres, and other parcels of Iowa land. It also discloses that, at the time of its execution, there were mortgages outstanding on different parcels of said land, in the aggregate sum of $33,000. The trust deed in question contains a covenant of general warranty, and further recites that:

"This deed is made for the purpose of securing the payment of all my indebtedness to the First National Bank of Sioux Rapids and its assigns as evidenced by promissory notes together with renewals and extensions thereof and any additional indebtedness that I may hereafter contract to the said bank, whether evidenced by promissory notes or otherwise."

The record discloses that the last renewal note delivered by Stella Torkelson to the bank bore date December 11, 1926, in the sum of $8,462.79. The trust deed in question covered an undivided five-ninths interest in and to the real property devised by Torkelson. This undivided interest represented the one third which was devised to her by the testator, and a two-ninths interest which represented the share of her two children

Howard and Lawrence, each receiving an undivided one-ninth interest under the will, which interest had been quitclaimed by them respectively to the mother. Stella Torkelson defaulted, under the terms of her trust deed.

The trial court adjudged and decreed that the plaintiff was entitled to a personal judgment against Stella Torkelson in the amount of the note, plus interest, attorney's fees, and costs, and also entered a decree of foreclosure, and that a special execution issue against the mortgaged premises as to the five-ninths interest therein, reserving to her the statutory right of redemption. To the correctness of this decree, under the record facts, we discover no ground of objection. Even though we should view the interest of Stella Torkelson as merely a beneficial estate, or interest of a *cestui que trust,* such interest possesses the same incidents and consequences as attach to similar legal estates and interests. It may be sold or alienated as other interests in property, legal or equitable, and may be mortgaged, the same as other estates. 39 Cyc. 203. In the instant case, if it be conceded, *arguendo,* that there was a trust, the trustees never exercised their power to convey or incumber, and have not questioned this trust deed. The defendant Stella Torkelson, under the will of her husband, did hold, at the time of the execution of the trust deed, a legal title to a certain undivided interest in the land which constituted the subject-matter of the trust deed executed by her.

II. We now turn to the other written instruments (note and mortgage) involved in Division 2 of plaintiff's petition. Judgment on the note and decree of foreclosure of the mortgage is prayed. It appears that, subsequently to June 2, 1921, when the appellee bank held the trust deed upon the undivided five-ninths interest of Stella Torkelson (of the land in question), the appellants had an opportunity to sell a certain 80 acres of said land, and desired a release of the 80 acres from the trust deed, so that the said 80 could be sold, and a good title given by the appellants. In order to procure this release, the appellants Eilett and Joyce Torkelson and Olive Torkelson Anderson, with her husband Oscar, and Bendix Torkelson made and delivered to the appellee bank their note, secured by a mortgage covering their four-ninths interest in said land. Bendix Torkelson signed by his attorney in fact. This note and mortgage

bore date of March 9, 1922. The note was in the principal sum of $4,000. The mortgage conveyed the undivided four ninths of the parcel of real estate described as the northwest quarter and the southeast quarter of Section 9-93-36, west of the 5th principal meridian. The 80 sold under contract to the vendee, B. A. Halverson, was the north half of the northeast quarter 16-93-36. The grantors covenanted to warrant and defend the title to said real estate against the lawful claims of all persons whomsoever, except two prior mortgages, "aggregating not to exceed $30,000 on the entire half section." The mortgage also recites that "the said grantors covenant, they together with their mother, Stella Torkelson, are the owners in fee of said premises." The transaction was negotiated by Lawrence Torkelson, who had charge of the legal work connected with the sale of this particular 80 acres; and the widow, Stella, knew that he was negotiating with the bank for the release of the 80 acres covered by the trust deed referred to in Division 1 of plaintiff's petition. The appellee bank did release in writing the 80 acres, according to the agreement, and said release was delivered to the Torkelsons, and duly recorded. The vendee of the 80 had agreed in writing to pay the vendor-appellants $7,750 for this land. It further appears that the appellee bank would not release the trust deed upon the five-ninths interest of the widow (which undivided interest also covered the 80 acres) until other security was given to the bank. Hence, the mortgage in question.

Pursuant to the matters aforesaid, a probate deed was executed, under order of court dated February 28, 1922, authorizing the executors of the Torkelson estate to sell and convey the said 80 acres, and the report of the sale was approved by the court. On March 23, 1922, Stella Torkelson and B. J. Torkelson, as executors of the estate of L. A. Torkelson, deceased, did execute, sign, and deliver to B. A. Halverson a deed, in which the executors, in their official capacity, covenanted with the said grantee, Halverson, that they have in all respects complied with the orders of said court in the above-entitled cause, and with the laws of the state of Iowa. This deed was acknowledged by the said executors in due form, and was filed of record on March 28, 1922. No question is raised as to the authority of Lawrence Torkelson to act for Eilett, Joyce, and Bendix

Torkelson, under the power of attorney under which he acted in executing the instruments resulting in the sale and conveyance of this particular 80 acres to Halverson.

It may be stated that there is no personal property left in the estate, and that these appellants have no property other than their interests in the real estate, and that there is a deficiency judgment in a large amount against these defendants after the sale of the property in question.

One other matter deserves brief mention. Bendix Torkelson, at the time of the execution of the note and mortgage in question, was a minor. He became of age on July 30, 1923. Appellee pleads estoppel, on the theory and the law that Bendix cannot disaffirm the note and mortgage nearly six years after he became of age. Under the statute, Section 10493, Code, 1927 (Section 3189, Code, 1897), a minor is bound, not only by contracts for necessaries, but also by his other contracts, unless he disaffirms them within a reasonable time after he attains his majority, and places the other party *in statu quo* as to money or property remaining within his control which he received by virtue of his contract. See *Stout v. Ruschke*, 199 Iowa 402.

In conclusion, it may be said that all parties recognized the trust deed as a valid instrument. All parties recognized the necessity to secure a release of this trust deed, in order to convey the particular 80, and they were willing to give the bank other security in consideration therefor. The testimony shows that the money received from the sale of this 80 acres was required to pay taxes on land owned by the estate. It is quite obvious that the sale of the 80 acres in question was made for this purpose, and for the benefit of the estate. These matters were all understood, not only by the parties, but by the court. The executors themselves ratified the sale, and, as pointed out, did convey, under order of court, the 80 acres in question. By way of summary, it is shown that the appellee bank had a trust deed on the five-ninths interest, including the 80 acres, and all parties having any interest therein desired that the sale should be consummated. All parties did do the things necessary to effectuate the sale. The trial court held that these parties could not come in at this hour and raise any question as to the validity

of the mortgage, after having secured the benefit of the sale and the proceeds thereof. Estoppel was·pleaded, and it is a good plea. The decree entered by the trial court is—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.