In re William Glen MASON and
Linda Jo Mason, Debtors.

Larry S. EIDE, Trustee, Plaintiff,

v.

Richard A. MASON and Betty
L. Mason, Defendants.

Bankruptcy No. 94–40852XM.
Adv. No. 94–4147XM.

United States Bankruptcy Court,
N.D. Iowa,

Nov. 30, 1995.

Larry S. Eide, Trustee, Mason City, Iowa.

David J. Siegrist, Britt, Iowa, for Defendants.

## ORDER RE: COMPLAINT TO AVOID TRANSFER

WILLIAM L. EDMONDS, Chief Judge.

The matter before the court is the final trial of the trustee's complaint to avoid the mortgage granted by the debtors to defendants. Trial was held September 5 and 6, 1995 in Mason City, Iowa. Larry S. Eide appeared for himself as attorney for the trustee. David J. Siegrist appeared for the defendants. The court now issues its find-ings of fact and conclusions of law. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H).

## FINDINGS OF FACT

Debtors William Glen Mason and Linda Jo Mason, husband and wife, filed a Chapter 7 petition May 23, 1994. Defendants Richard A. Mason and Betty L. Mason are the parents of William Mason.

On September 29, 1993, the debtors purchased real estate for $7,000.00 from the Iowa Seventh-day Adventist Association under a real estate contract. Exhibit A. The contract provided for a down payment of $700, monthly payments of $200 and a balloon payment on October 1, 1994. The debtors made the down payment but made no monthly payments. The real estate is legally described as:

The West Half (W½) of Lots Six (6) and Seven (7), in Block Thirty-seven (37), Forest City, Winnebago County, Iowa.

The property is locally known as 205 N. 9th Street, Forest City, Iowa. The real estate contract was not recorded.

When the debtors purchased the property, it was an empty church building. They immediately began making improvements to the property, and eventually turned it into a two-story, four-bedroom home. The debtors first occupied the property as their home about March 9 or 11, 1994.

The debtors wanted to complete the renovation project quickly and decided to borrow money. William Mason discussed the situation with his father. Richard Mason was interested in financing the project as an investment. William and his father agreed that Richard and Betty Mason would make a loan secured by the real estate in an amount sufficient to pay off the real estate contract and to purchase materials for the renovation. They reached this agreement in early January 1994, prior to meeting with banker Dan DeBoest on January 6. William and Richard met with DeBoest to ask for advice on arranging the transaction. DeBoest gave them forms for a note and mortgage and explained the documents. DeBoest suggested having an attorney prepare the documents.

Richard Mason was employed at Winnebago Industries. Richard met with Raymond Beebe, general counsel at Winnebago, to ask Beebe to assist with the transaction. This meeting took place in the latter part of January or on the first day of February. Richard brought to the meeting a list of things he thought needed to be done. Exhibit C. Beebe agreed to examine the abstract for William and Linda Mason, and to prepare a note and record a mortgage for Richard and Betty Mason.

On February 1, 1994, William Mason telephoned the Seventh-day Adventist office regarding updating the abstract and paying off the contract early. Beebe prepared a title opinion February 28, 1994. Exhibit D. On March 7, 1994, the Seventh-day Adventist office sent Beebe additional documents in preparation for closing the sale. Exhibits G, H, I, J, K. On March 23, 1994, Beebe sent a cashier's check to the Seventh-day Adventist office for the balance of the real estate contract. Exhibits L, M. On April 4, the Seventh-day Adventist Association executed a warranty deed to Richard and Linda Mason. Exhibit Q. The deed was forwarded to Beebe.

On March 30, the debtors themselves prepared a note for $18,500 and signed it. Exhibit N. They had not yet received a final note document from Beebe and wanted to put their agreement in writing.

Richard Mason advanced money for materials for the renovation and to pay the balance owing on the real estate contract on the dates and in the amounts as follows:

| | |
|---|---:|
| February 3, 1994 | $ 2,000.00 |
| February 4, 1994 | 200.00 |
| February 11, 1994 | 4,500.00 |
| February 22, 1994 | 2,500.00 |
| March 4, 1994 | 1,000.00 |
| March 14, 1994 | 1,100.00 |
| March 17, 1994 | 1,000.00 |
| March 23, 1994 (contract) | 6,518.00 |
| April 1, 1994 | 3,030.21 |
| April 4, 1994 | 750.00 |
| April 9, 1994 | 356.00 |
| TOTAL | $22,954.21 |

Exhibit T. By April 11, the parties had agreed to include in the loan an additional $4,700 to pay a debt to Heartland Home Center. Beebe prepared a note for the amount of $27,655. Exhibits O, P. On April 18, William and Linda Mason executed the note and mortgage and delivered them to Richard and Betty Mason. Exhibits P and S. Beebe recorded the warranty deed to William and Linda Mason, then the mortgage to Richard and Betty Mason in the office of the Winnebago County Recorder on April 19, 1994.

Richard Mason did not advance the money to pay the debt to Heartland Home Center, and the debt was not paid. Heartland filed a mechanic's lien. The encumbrances against the property, in addition to the mortgage to Richard and Betty Mason, are real estate taxes and Heartland's mechanic's lien in the approximate amount of $4,800 plus interest.

The debtors' financial difficulty stemmed from William Mason's former employment with Equitable Life Assurance Society in West Des Moines. William testified that when he became a manager at Equitable, his employer did not withhold taxes. William and Linda Mason owed income taxes for 1991 and 1992. When he left Equitable in August 1993, William knew he would owe money for overpaid commissions. In November or December, 1993, he became aware that Equitable's claim for commissions was much larger than he thought. At the time of the debtors' bankruptcy petition, Equitable's claim totaled approximately $11,500. The claim was scheduled under the name "Insurance Recovery Serv". After William left Equitable, the debtors moved to Forest City where William was employed by Massachusetts Mutual Life until mid-February, 1994. In March, 1994 William Mason became aware of a claim by Phil Tisue, general agent of Massachusetts Mutual, for $6,852.44. William disputes the claims of both Equitable and Tisue, although he has not filed objections to their claims. Richard Mason has objected to Tisue's claim. The objection has not been ruled upon.

The debtors valued their home at $30,000 in their bankruptcy schedules. Exhibit 1. The trustee has established in prior proceedings that the homestead is not exempt property under Iowa law to the extent of preacquisition debt. The debtors scheduled per-

sonal property valued at $5,700, all of which was claimed exempt without objection. They scheduled unsecured priority tax claims totaling approximately $8,250 and general unsecured claims totaling approximately $32,300.

The trustee has filed a report on claims showing 19 timely filed claims. Exhibit 2. These claims, other than Tisue's, are deemed allowed and include priority claims of $7,821.41 and unsecured claims totaling $18,530.70, not including Richard Mason's claim filed as secured for $23,137.52, and Tisue's disputed unsecured claim for $6,852.44. Heartland Home Center filed a secured claim in the amount of $4,794.00.

## DISCUSSION

■ The trustee seeks to avoid the mortgage to Richard and Betty Mason, either as a preferential transfer pursuant to 11 U.S.C. § 547(b) or as a fraudulent transfer pursuant to 11 U.S.C. § 548(a). The trustee tried the fraudulent transfer claim on the theory of constructive fraud under § 548(a)(2). The trustee argued that when the debtors gave the mortgage, they received less than a "reasonably equivalent value" in exchange. 11 U.S.C. § 548(a)(2)(A).

For the purposes of § 548:

"value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

11 U.S.C. § 548(d)(2)(A). The debtors received value when they gave the mortgage to secure antecedent debt. The court finds and concludes that the debtors received a reasonably equivalent value in exchange for the mortgage. The trustee's fraudulent transfer claim should be dismissed.

■ The trustee claims alternatively that the mortgage was a preferential transfer. A trustee may avoid:

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The trustee has established the elements of a preference. The mortgage was a transfer of an interest in the debtors' property for the benefit of Richard and Betty Mason on account of antecedent debt. The transfer was made April 18, 1994 for debt created between February 3 and April 9, 1994. See 11 U.S.C. § 547(e)(2)(A) (transfer is made at time transfer takes effect between the parties if transfer is perfected within 10 days). The transfer was made within the one-year preference period for transfers to insiders. See 11 U.S.C. §§ 101(31)(A), 101(45) ("insider" includes individual related within third degree). Because the transfer was made within 90 days before the petition was filed, the trustee has the benefit of a presumption that the debtors were insolvent at the time of the transfer. 11 U.S.C. § 547(f). The evidence of the amount of the debtors' debts and the value of their property supports a finding of insolvency. 11 U.S.C. § 101(32)(A). The transfer would enable Richard and Betty Mason to receive a distribution greater than they would have received in a Chapter 7 case absent the transfer. The mortgage gave them a lien on the property, subject only to real estate taxes and the mechanics' lien of Heartland Home Center. As general unsecured creditors they would share pro rata in the proceeds remaining after payment of liens and priority claims.

■ Richard and Betty Mason argue that the mortgage is not avoidable pursuant to 11 U.S.C. § 547(c)(1) which provides:

The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). " 'New value' means money or money's worth in goods, services, or new credit ... but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). Richard Mason gave new value each time he made an advance on the loan. The issues are whether the parties intended the mortgage to be a contemporaneous exchange for new value and whether the transfer was in fact a substantially contemporaneous exchange. Each issue is a question of fact. *Tyler v. Swiss American Securities, Inc. (In re Lewellyn & Co., Inc.)*, 929 F.2d 424, 427 (8th Cir.1991).

■ The requirement that the parties intend a contemporaneous exchange codifies the rule in *National City Bank of New York v. Hotchkiss*, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). *Rutledge v. First National Bank of Sallisaw, Oklahoma (In re Carson)*, 119 B.R. 264, 267 (Bankr.E.D.Okla. 1990); 4 Collier on Bankruptcy ¶ 547.09 at 547–50. In *Hotchkiss*, the creditor made an unsecured loan to a securities broker. Later the same day, the creditor learned the debtor was in financial difficulty and demanded security for its loan. The parties had not originally intended to make a secured loan. The court held that the transfer was avoidable as a preference. In determining the intent prong of § 547(c)(1)(A), the court should examine the intent with which the loan was sought and made. *T.I. Swartz Clothiers, Inc. v. Union Trust Co. of Maryland (In re T.I. Swartz Clothiers, Inc.)*, 15 B.R. 590, 592 (Bankr.E.D.Va.1981).

In our case, the trustee has not argued that the parties lacked an intent to make a contemporaneous exchange. Both Richard Mason and William Mason testified that they contemplated a secured loan from the beginning. Richard Mason would not have agreed to the loan without the promise of a mortgage. There was no evidence to suggest that the parties at the outset of their agreement intended the exchange to be other than contemporaneous. The court assumes their intent continued over the course of the transaction. The court finds and concludes that the parties intended the mortgage to be a contemporaneous exchange for new value.

The second prong of § 547(c)(1), that the transfer must have been in fact a substantially contemporaneous exchange, preserves the rule of *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). *Carson*, 119 B.R. at 267; 4 Collier on Bankruptcy ¶ 547.09 at 547–51. In *Dean v. Davis*, the debtor executed a mortgage seven days after the creditor made the loan. The mortgage was recorded the next day. The court held that the mortgage was not a preferential transfer because it was given for a "substantially contemporary" advance. *Dean v. Davis*, 242 U.S. at 443, 37 S.Ct. at 131.

The situation in the present case is similar to the facts in *Dean v. Davis*. The mortgage to Richard and Betty Mason was promptly recorded after execution and delivery. The delay took place between the dates Richard Mason gave new value and the date the mortgage was executed. Therefore, this case does not involve the issue of delayed perfection of a security interest. *Compare Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir.1984) (any security interest perfected more than ten days after creation not excepted by § 547(c)(1)) *with Telecash Industries, Inc. v. Universal Assets (In re Telecash Industries, Inc.)*, 104 B.R. 401 (Bankr.D.Utah 1989) (month delay in filing financing statement does not defeat § 547(c)(1) defense as a matter of law).

In this case, Richard Mason gave new value on eleven dates between February 3, 1994 and April 9, 1994. Exhibit T. The April 18 transfer was made 74 days after the earliest advance and nine days after the last. Section 547(c)(1) provides that the trustee may not avoid transfers "to the extent" that

they meet both prongs of the exception. This language allows partial avoidance of transfers. The court must decide whether the mortgage was in fact substantially contemporaneous with any of the dates on which Richard Mason gave new value.

The Bankruptcy Code does not provide an objective standard for determining what is "substantially contemporaneous." It is not a defined phrase. The word "substantially" allows some flexibility in the analysis. It may be defined as "to a considerable or large extent." See Webster's II New Riverside University Dictionary 301, 1155 (1984). Use of the word "contemporaneous" also permits some discretion. One definition provides:

> *Contemporaneous* does not precisely mean "simultaneous"; rather, it means "belonging to the same time or period; occurring at about the same time."

Bryan A. Garner, A Dictionary of Modern Legal Usage 148 (1987).

The contemporaneous exchange exception applies to several types of transactions. The legislative history shows that Congress intended § 547(c)(1) to apply to payment for new goods and services by check. H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977) U.S.Code Cong. & Admin.News 1978 at pp. 5963, 6329. In *Arnett* the court indicated that a guideline for § 547(c)(1) is the standard commercial practice for the type of transaction involved. *Arnett*, 731 F.2d at 362. See also *Pine Top Insurance Co. v. Bank of America National Trust & Savings Assn.*, 969 F.2d 321, 328 (7th Cir.1992) (nature of the transaction one factor); *Allison v. First National Bank & Trust Co. (In re Damon)*, 34 B.R. 626, 631 (Bankr.D.Kan. 1983) (burden is on creditor to show that more than 10–day delay in perfection was commercially reasonable and beyond creditor's reasonable control); Richard F. Duncan, *Section 547(c)(1) and Delayed Perfection of Security Interests in the Ninth Circuit: In re Vance*, 721 F.2d 259 (9th Cir. 1983), 58 Am.Bankr.L.J. 269 (1984) (arguing for exception of security interests perfected within commercially reasonable time). A commercial reasonableness standard would allow some flexibility, while also preserving the requirement of temporal proximity,

which the court in *Arnett* thought was lacking in the bankruptcy court and district court analyses. *Arnett*, 731 F.2d at 364.

■ In the present case, the court must consider whether the delays of nine to 74 days in obtaining the mortgage after advancing new money was commercially reasonable under real property law so as to be substantially contemporaneous. The Supreme Court in *Dean v. Davis* held without comment that a mortgage obtained seven days after the loan was substantially contemporary with the advance. Thus, under § 547(c)(1), a seven-day delay is presumptively substantially contemporaneous. The last advance made by Richard Mason, nine days before the mortgage, was so close to that period that it should also be considered within the exception. The mortgage should not be avoided to the extent of $356.00.

■ However, as to the remainder of the advances, the court concludes that the transfer was not substantially contemporaneous. The delay was not commercially reasonable because it unnecessarily put Richard and Betty Mason at risk that another creditor would obtain a prior interest in the property. At the time of each advance, debtors had a mortgageable interest in the property. Under the doctrine of equitable conversion, William and Linda Mason acquired equitable title to the property, a real estate interest, when they entered into the real estate contract. The Seventh-day Adventist Association, as vendor, retained legal title as security for the payment of the purchase price, a personal property interest. *Junkin v. McClain*, 221 Iowa 1084, 265 N.W. 362, 365–66 (1936); *Knapp v. Baldwin*, 213 Iowa 24, 238 N.W. 542, 544–45 (1931). The creation of title in the buyers is not affected by the fact that the contract was not recorded. *Knapp v. Baldwin*, 238 N.W. at 544. Legal and equitable estates in Iowa are alienable generally. See *First National Bank of Sioux Rapids v. Torkelson*, 209 Iowa 659, 228 N.W. 655, 657 (1930) (legal and equitable interests in property may be sold or alienated; beneficial interest may be mortgaged same as other estates). The purchaser under a real estate contract may sell or mortgage his equitable interest. See *Durband v. Ney*, 196

Iowa 574, 191 N.W. 385, 388 (1923) (holder of equitable estate in land may contract for its sale); *Clinton House Motel, Inc. v. First National Bank of Clinton,* 316 N.W.2d 417, 419–20 (Iowa App.1981) (trial court held land company had mortgageable interest because of equitable conversion; appellate court affirmed on alternate ground without finding whether company held equitable title).

William and Linda Mason could have mortgaged their real estate interest in early February 1994 when William's parents first began making advances on the loan. A mortgage at that time would have given Richard and Betty Mason a lien on the equitable title. Moreover, the mortgage could have purported to convey a greater estate—fee simple absolute—and when title was transferred to buyers by the church, the after-acquired interest would have inured to the mortgagees' benefit. Iowa Code § 557.4; *Rice v. Kelso,* 57 Iowa 115, 7 N.W. 3, 4 (1880).

Defendants contend that had they taken and recorded a mortgage on the property prior to the recording of the deed from the church to the debtors, the mortgage would have been void because debtors did not then hold title. This ignores the fact that debtors had entered into a written contract of purchase. Recordation of the debtors' contract and the parents' mortgage would have protected Richard and Betty Mason.

The defendants argue that the advances on the loan and the giving of the note and mortgage were all part of the same transaction, and that the abstract, title opinion, note and deed were prepared within a normal range of time. The court does not question that fact. The problem in this case is that the defendants made the choice to advance the money first without taking a mortgage. Despite their ability to control the order of events, they took the unnecessary risk that other liens or interests would attach to the debtors' equitable title. *Rice v. Kelso,* 7 N.W. at 4. This choice caused commercially unreasonable lapses of time between the advances and the mortgage so that the transfer can no longer be considered in fact a substantially contemporaneous exchange.

■ It may be argued that defendants' mortgage was a purchase money mortgage,

and that as such, it was entitled at its inception to priority over other claims arising through the mortgagor. If this were so, then perhaps the delay in the execution and recording of the mortgage is immaterial. Such an argument would beg the question. The court will assume that one who lends money to a contract vendee for the purpose of paying off the contract balance and obtaining a deed is a purchase money lender, see *Laidley v. Aikin,* 80 Iowa 112, 45 N.W. 384, 385 (1890), although this proposition is not without doubt. *Ely Savings Bank v. Graham,* 201 Iowa 840, 208 N.W. 312, 314 (1926). "A 'purchase money mortgage' . . . is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and, without stopping, vests in the mortgagee. It follows, therefore, that no lien of any character can attach to the title of the mortgagee, and that the title and interest has preference over previous judgments against the purchaser-mortgagor." *Keefe v. Cropper,* 196 Iowa 1179, 194 N.W. 305, 306 (1923). The parties must intend that the money loan be used to pay the purchase price of the land. *Ely Savings Bank,* 208 N.W. at 314. It has been held that the deed and mortgage need not be executed at the same moment. *Marin v. Knox,* 117 Minn. 428, 136 N.W. 15, 17 (1912) (where parties resided in different states, "a few days' difference in the delivery of the instruments that completed the one transaction is not significant.") Nonetheless, under Iowa law, the gap "between the giving of the deed and the execution of the mortgage is chargeable to the [mortgagee.]" *Keefe v. Cropper,* 194 N.W. at 307. During that period, the mortgage is subject to the claim of a purchaser for value without notice. *Id.* at 307–08. The court will presume that Beebe received the deed from the church by mail on April 7, 1994. This is based on the evidence that the church officer executed the deed on April 4, 1994. If it were mailed the same day and if three days is allowed for mailing (the bankruptcy rules presume such, Fed.R.Bankr.P. 9006(f); Beebe added three days of interest to the payoff figure in mailing the check to the church (Exhibit L)), the

deed was received on April 7, 1994. The mortgage was not executed until April 18, 1994, a gap of 11 days. The court finds the gap commercially unreasonable in obtaining a purchase-money mortgage and therefore concludes that the transfer of the mortgage to Richard and Betty Mason was not substantially contemporaneous within the meaning of 11 U.S.C. § 547(c)(1).

The defendants argue that they are entitled to an equitable lien that would defeat the trustee's avoidance powers. They argue that the unsecured creditors will be unjustly enriched if they are allowed to share in the proceeds of the property because the defendants' loan created the value which made a distribution possible. The case of *Lewis v. Diethorn,* 893 F.2d 648 (3d Cir.1990), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990), cited by the defendants, does not support their argument. In *Lewis v. Diethorn,* the court held that a payment to settle a lawsuit was not a preference because it was not on account of antecedent debt. *Id.* at 650. Alternatively, the court concluded that under Pennsylvania law an equitable lien would have arisen as a matter of law to prevent the unjust enrichment of the debtor, and that satisfaction of the lien would not cause the creditor to receive more than it would have received in a chapter 7 case if the transfer had not been made. *Id.* at 650–51.

In the Masons' case, the mortgage was a preferential transfer. Iowa law recognizes the equitable lien as a remedy that may be judicially imposed to prevent unjust enrichment. *Nachazel v. Mira Co. Mfg.,* 466 N.W.2d 248, 253 (Iowa 1991). However, the Masons would not have been entitled to an equitable lien under Iowa law because they already had an express legal lien. The imposition of an equitable lien may create a preference. Dan B. Dobbs, *Handbook on the Law of Remedies* § 4.3 at 249 (1973). The preference may be justified on the ground of unjust enrichment. *Id.* at 244. The injustice complained of by the defendants appears to be the operation of bankruptcy preference law. There are probably few preference defendants who think it is fair that they must return a preferential transfer. However, the function of preference law is to promote the policy of equitable distribution among all creditors. *Rovzar v. Biddeford & Saco Bus Garage, Inc. (In re Saco Local Development Corp.),* 25 B.R. 876, 880 (Bankr. D.Me.1982); *Grant v. Jacksonville Postal Credit Union (In re Anders),* 20 B.R. 468, 469 (Bankr.M.D.Fla.1982). The bankruptcy court should not impose a preferential equitable lien when the creditor's legal lien is avoidable as a preference. The defendants' defense to the trustee's § 547 avoidance power is limited to the exceptions in § 547(c).

### *ORDER*

IT IS ORDERED that the trustee's claim pursuant to 11 U.S.C. § 548 is dismissed.

IT IS FURTHER ORDERED that to the extent of $356.00 and interest thereon and allowable costs, the mortgage of Richard Mason and Betty Mason is not avoided.

IT IS FURTHER ORDERED that the remaining amount of the Masons' mortgage is avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b). Judgment shall enter accordingly.

SO ORDERED.